219 P.3d 642 (2009)
STATE of Washington, Respondent,
v.
Tyler S. KING, Petitioner.
No. 80948-8.
Supreme Court of Washington, En Banc.
Argued January 13, 2009.
Decided October 15, 2009.
*643 Mark W. Muenster, Vancouver, for Petitioner/Appellant.
John Peterson, Clark County Prosecutor's Office, Vancouver, for Appellee/Respondent.
SANDERS, J.
¶ We must decide whether a police officer had the authority to arrest a motorcyclist for reckless driving outside the officer's jurisdiction and whether the officer later offered improper opinion testimony at trial. Tyler Sherwood King was riding his motorcycle southbound on Interstate 5(1-5), north of the Vancouver, Washington, city limits, when Vancouver police officer Jeff Starks spotted him. Starks was on his way to work, driving an unmarked police car outside his department's jurisdiction. According to the officer, King stood on his motorcycle's foot pegs for three to four seconds while driving at about 70 m.p.h., looked at a nearby car, changed lanes, and then accelerated away at a high rate of speed. Starks pulled King over and issued him a criminal citation for reckless driving under RCW 46.61.500. King moved to dismiss, arguing Starks arrested him outside his department's boundaries without a valid interlocal agreement allowing him to do so. But the district court upheld the arrest, ruling Starks had the authority to cite King under the emergency exception contained in RCW 10.93.070(2), involving "an immediate threat to human life or property." The jury convicted King, and the superior court affirmed on appeal. We granted review of a Court of Appeals order denying review of the superior court decision. We now reverse King's conviction for reckless driving because the police officer lacked jurisdiction to make the arrest since King's actions did not fall within the emergency exception of RCW 10.93.070(2).

FACTS AND PROCEDURAL HISTORY
¶ 2 On April 5, 2006, Tyler King rode from Vancouver to a Longview shop where a friend worked, to see if he could get his motorcycle repaired. King said the repairs, which included fixing the speedometer and odometer, were too expensive, so he rode the bike home. King was riding southbound on I-5 in the middle lane and saw a Dodge Durango truck on his left, in the fast lane. King said he stood on his motorcycle's pegs for three to five seconds to stretch out and also to allow the driver of the large truck to see him. King testified that on other occasions drivers had abruptly pulled over into his lane without seeing him on his motorcycle, and he was worried about getting run over. Because he was wearing a full-face helmet, King turned his head to the left to see the truck, and thinking he was in the *644 driver's blind spot, he sped up to pass the Durango. King testified that after he passed the truck, he slowed down to the speed of the traffic around him. He said he told Officer Starks that he stood up on the bike's pegs to relieve his numb buttocks and that he thought it was safer to get away from the large truck.
¶ 3 Meanwhile, Officer Starks of the Vancouver Police Department had entered I-5 at the La Center Road on-ramp at milepost 16. Starks testified he was driving his assigned patrol car, a black, unmarked Ford Crown Victoria, southbound to report to work. He said he saw King stand on his motorcycle for three to four seconds while he was going about 70 m.p.h. The speed limit on that stretch of I-5 is 70 m.p.h. Verbatim Report of Proceedings (RP) at 167. The officer saw King look to his left at the blue Dodge Durango and "thought [King] was taunting the vehicle ... the driver of the vehicle." Id. at 165 (alteration in original). Starks said King then sat down on his motorcycle, changed lanes, and accelerated away at a high rate of speed, which Starks estimated at 100 m.p.h.
¶ 4 Starks said he didn't use his radar to check King's speed, and "it may not even have been on at the time." Id. at 166. On cross-examination, Starks said radar and laser were routinely used to confirm visual estimates of a driver's speed but could not recall if his department required officers to verify their estimates with those devices before writing a ticket. Starks said he accelerated to catch up with King and signaled for him to pull over. King pulled over without delay. Starks' patrol car was equipped with a video camera, and the officer had activated it. But by the time the camera started recording, the video only shows Starks driving quickly past King, who had pulled over, and the officer then backing up on the shoulder to reach the motorcyclist. Starks cited King for reckless driving on I-5, near milepost 14, north of Vancouver's city limits. On cross-examination, the officer agreed he had written on the citation that King was standing on the seat of his motorcycle, not its pegs. However, he said he could not testify as to whether King had stood on the seat or not.
¶ 5 According to the State, defense counsel attacked the officer's credibility regarding what part of the bike King stood on; what Starks wrote on the ticket; that he did not have video, radar, or laser readings to verify King's speed; and Starks' inexperience with motorcycles, among other issues. The State raises this line of questioning in connection with Officer Starks' offering opinion testimony. Before that cross-examination, however, the prosecutor had asked Starks his opinion about King's driving, and Starks replied, "I felt that the entire act of what he had done was reckless in my viewpoint." Id. at 171. The prosecutor asked Starks whether he had been trained on the elements of reckless driving, and Starks replied he had. The prosecutor then asked whether the officer felt King's driving was within those elements, and Starks replied, "I did." Id. King's lawyer did not object. In closing argument the prosecutor reiterated, "Officer Starks said here today[, `]I thought it was dangerous and I felt it was reckless to me[']. Therefore, I would just ask that you convict the Defendant of reckless driving." Id. at 273.
¶ 6 On November 21, 2006, the jury unanimously convicted King of reckless driving.[1] The judge sentenced King to two days of community service and two years of probation, and ordered him to pay $446 in fines and take a defensive driving course. The Clark County Superior Court affirmed the conviction on appeal. The court agreed that an arrest for reckless driving was justified *645 under the emergency exception of RCW 10.93.070(2), allowing officers to arrest across jurisdictional boundaries. The court also ruled that Starks' opinion testimony had not denied King a fair trial and that his counsel was not ineffective for failing to object to that testimony.
¶ 7 King sought discretionary review in the Court of Appeals, renewing his arguments that the officer cited him without authority and improperly commented on his guilt. But the commissioner denied review, reasoning that since King had not objected to the opinion testimony at trial, he was foreclosed from raising it on appeal since he could not show any court ruling that conflicted with appellate court decisions. Ruling Den. Review at 3 (Wash. Ct. Appeals, No. 36606-1-II (Sept. 25, 2007)). As to the second issue, the commissioner concluded King failed to show the interpretation of the emergency exception in RCW 10.93.070(2) was an issue of public interest warranting review. Id. at 4. The commissioner also said King's actions were similar to the erratic driving that previously justified an extraterritorial arrest in another Court of Appeals case, City of Tacoma v. Durham, 95 Wash.App. 876, 881-82, 978 P.2d 514 (1999). Id. King's motion to modify the commissioner's ruling was denied, with one judge dissenting.
¶ 8 We granted review to consider the following issues:
(1) Did Officer Starks' opinion testimony improperly invade the province of the jury and constitute manifest constitutional error that was not harmless?
(2) Was King's arrest by an officer outside his territorial jurisdiction valid under the emergency exception of RCW 10.93.070(2)?

STANDARD OF REVIEW
¶ 9 In general, appellate courts will not consider issues raised for the first time on appeal. State v. Kirkman, 159 Wash.2d 918, 926, 155 P.3d 125 (2007). RAP 2.5(a). But a party can raise an error for the first time on appeal if it is a manifest error affecting a constitutional right. Kirkman, 159 Wash.2d at 926, 155 P.3d 125; RAP 2.5(a)(3). The defendant must show the constitutional error actually affected her rights at trial, thereby demonstrating the actual prejudice that makes an error "manifest" and allows review. Kirkman, 159 Wash.2d at 926-27, 155 P.3d 125. "If a court determines the claim raises a manifest constitutional error, it may still be subject to the harmless error analysis." Id. at 927, 155 P.3d 125. Opinion testimony regarding a defendant's guilt is reversible error if the testimony violates the defendant's constitutional right to a jury trial, which includes the independent determination of the facts by the jury. Id.
¶ 10 The meaning of the emergency exception in RCW 10.93.070(2) is a question of law we review de novo. State v. Plaggemeier, 93 Wash.App. 472, 477, 969 P.2d 519 (1999). The chapter "`shall be liberally construed to ... modify current restrictions upon the limited territorial and enforcement authority of general authority peace officers and to effectuate mutual aid among agencies.'" Id. n. 4 (quoting RCW 10.93.001(3)).

ANALYSIS

I. Officer Starks' Opinion Testimony

¶ 11 King argues that Starks opined he was guilty of reckless driving, and the Court of Appeals erred by ruling that such an opinion on guilt cannot be raised for the first time on appeal. The relevant portion of the officer's testimony is as follows:
[Prosecutor]: So based on your training, experience and observations of the Defendant's driving, did you form an opinion regarding his driving?
[Officer Starks]: Yes, I did.
[Prosecutor]: And what is that opinion?
[Officer Starks]: I felt that the entire act of what he had done was reckless in my viewpoint.
[Prosecutor]: Okay. And what ... have you been trained on reckless driving ... the elements of reckless driving?
[Officer Starks]: Yes.
[Prosecutor]: Okay. So you felt this was within those elements?

*646 [Officer Starks]: I did.
[Prosecutor]: And did you issue him a criminal citation?
[Officer Starks]: I did.
[Prosecutor]: For reckless driving?
[Officer Starks]: Yes I did.
RP at 170-71.
¶ 12 Having presented no other evidence besides the officer's testimony, the prosecutor said in closing:
[Describing King's driving] All of these things are reckless. Just one of these things could be considered reckless. All of these things, taken together, constitute reckless driving.
Officer Starks wrote him a ticket. Officer Starks said here today[, `]I thought it was dangerous and I felt it was reckless to me.['] Therefore, I would just ask that you convict the defendant of reckless driving. Id. at 273.
¶ 13 "Generally, no witness may offer testimony in the form of an opinion regarding the guilt or veracity of the defendant; such testimony is unfairly prejudicial to the defendant `because it "invad[es] the exclusive province of the [jury]."'" State v. Demery, 144 Wash.2d 753, 759, 30 P.3d 1278 (2001) (alterations in original) (quoting City of Seattle v. Heatley, 70 Wash.App. 573, 577, 854 P.2d 658 (1993) (quoting State v. Black, 109 Wash.2d 336, 348, 745 P.2d 12 (1987))); see also ER 608 cmt. (noting, "drafters of the Washington rule felt that impeachment by use of opinion is too prejudicial and on a practical level is not easily subject to testing by cross examination or contradiction"). Thus, neither a lay nor an expert witness "may testify to his opinion as to the guilt of a defendant, whether by direct statement or inference." Black, 109 Wash.2d at 348, 745 P.2d 12. A law enforcement officer's opinion testimony may be especially prejudicial because the "officer's testimony often carries a special aura of reliability." Kirkman, 159 Wash.2d at 928, 155 P.3d 125.
¶ 14 The State conceded Officer Starks' opinion testimony was improper. "As in Montgomery Officer Starks' testimony would be considered improper under current case law because it is an expression by a police officer that goes to the guilt of Defendant." Br. of Resp't at 12; see State v. Montgomery, 163 Wash.2d 577, 183 P.3d 267 (2008) (holding State's opinion testimony was improper, but finding that error harmless and concluding on other grounds that defendant had been prejudiced). But, the State argues, because the officer's testimony did not result in actual prejudice, it cannot be raised for the first time on appeal under RAP 2.5(a). Br. of Resp't at 12.
¶ 15 The commissioner's ruling did not reach the issue of whether the officer's testimony invaded the province of the jury and resulted in actual prejudice. That decision erred by foreclosing review simply because King's attorney did not object at trial and failing to mention, let alone engage in, a manifest constitutional error analysis. "[A]s Heatley makes clear, a claim of improper opinion testimony cannot be raised for the first time on appeal." Ruling Den. Review, supra, at 3 (citing Heatley, 70 Wash.App. at 583-86, 854 P.2d 658). The commissioner's reliance on Heatley was misplaced. First, Heatley rejected only the notion that improper opinion testimony necessarily constitutes manifest constitutional error that will be considered for the first time on appeal. 70 Wash.App. at 586, 854 P.2d 658. The case does not stand for the broad assertion that such opinion testimony on guilt can never be raised on appeal if there was no objection at trial.
¶ 16 Second, this court recently clarified the issue in Kirkman, providing an outline of the scope of RAP 2.5(a)(3) as applied to improper opinion evidence. Kirkman, 159 Wash.2d at 936, 155 P.3d 125. "Admission of witness opinion testimony on an ultimate fact, without objection, is not automatically reviewable as a `manifest' constitutional error." Id. (emphasis added). But, "an explicit or nearly explicit" opinion on the defendant's guilt or a victim's credibility can constitute manifest error. Id. at 936, 155 P.3d 125 (noting, "[r]equiring an explicit or almost explicit witness statement on an ultimate issue of fact is consistent with our *647 precedent holding the manifest error exception is narrow").
¶ 17 To determine whether statements are impermissible opinion testimony, a court will consider the circumstances of a case, including, "`(1) "the type of witness involved," (2) "the specific nature of the testimony," (3) "the nature of the charges," (4) "the type of defense," and (5) "the other evidence before the trier of fact."'" Id. at 928, 155 P.3d 125 (quoting Demery, 144 Wash.2d at 759, 30 P.3d 1278 (quoting Heatley, 70 Wash.App. at 579, 854 P.2d 658)). Here, the Court of Appeals failed to review King's claim of improper opinion testimony and engage in a manifest constitutional error analysis.[2] The court allowed the commissioner's ruling to stand, and that ruling relied on an overly broad reading of Heatley[3] and did not take into account our analysis in Kirkman.[4]
¶ 18 Nonetheless, we conclude that we can resolve this case solely on the issue of whether Officer Starks had jurisdiction to arrest King in the first place. Thus, we need not rule on whether the officer's opinion testimony-which the State concedes was improper-constituted a manifest error and was not harmless.

II. Emergency Exception to Territorial Jurisdiction

¶ 19 King contends that Starks could not arrest him for reckless driving because the officer had no authority under a valid interlocal agreement, and the emergency exception to territorial jurisdiction did not apply. The district court found the State had not established there was such an agreement authorizing the arrest under RCW 10.93.070(1) (allowing Washington police to enforce traffic and criminal laws across boundaries "[u]pon the prior written consent of the sheriff or chief of police" in the area where the offense occurs). But an officer can also make an arrest in other circumstances enumerated in the statute, including, "[i]n response to an emergency involving an immediate threat to human life or property." RCW 10.93.070(2). The district court read this exception broadly and concluded it necessarily covers reckless driving, defined as "willful or wanton disregard for the safety of persons or property." RCW 46.61.500(1); see RP at 71 (RCW 10.93.070(2) is "broad enough to include reckless driving"). The Clark County Superior Court and the Court of Appeals agreed.
¶ 20 To date, no decision has turned on the application of this exception, but a plain reading indicates King's driving does not qualify as an emergency involving an immediate threat to life or property. Durham is illustrative. 95 Wash.App. 876, 978 P.2d 514. There a man was spotted driving erratically in south Tacoma, running a red light, nearly hitting a transit supervisor's car, weaving across the center line, and rolling backward at a stop light. A Tacoma police officer heard about the man's dangerous driving over radio dispatch, caught up with him in Lakewood, and arrested him on suspicion of driving under the influence. The defendant argued the officer lacked authority for the arrest. The Court of Appeals held the officer was justified in making the extraterritorial arrest under the "fresh pursuit" exception in RCW 10.93.070(6). See also RCW 10.93.120 defining "`fresh pursuit.'"[5]
¶ 21 The Durham court also noted that the emergency exception of RCW 10.93.070(2) *648 provided independent justification for the DUI[6] arrest. 95 Wash.App. at 881, 978 P.2d 514. "Officer Quinn was responding to a 911 call by Stewart, who observed Durham's car weaving across the center line after it ran a red light and nearly struck his car. Clearly, this situation presented an emergency, and Quinn reasonably responded across jurisdictional lines." Id. at 881-82, 978 P.2d 514.
¶ 22 But here the district court merely took the definition of reckless driving and concluded that it automatically fit within the emergency exception. However King's actions did not reach the level of erratic driving that constitutes "an emergency involving an immediate threat to human life or property." RCW 10.93.070(2). Unlike Durham, King did not nearly hit another car, nor run a light, nor weave across traffic lanes. He did not pop a wheelie, cut off another car, nor, for that matter, drive in reverse along the shoulder.[7] At most, King glared at the driver of the large truck, stood on his foot pegs for three to five seconds, and accelerated at high speed past the truck. As aforementioned, Starks could not verify that King accelerated away at what he thought was 100 m.p.h. Even so, the officer testified King slowed down as he approached other traffic and pulled over immediately when Starks signaled him to do so. King may have exceeded the speed limit by a considerable margin, but his driving was not anywhere near as dangerous as that of the intoxicated defendant in Durham, 95 Wash.App. 876, 978 P.2d 514. Moreover, there was no eyewitness account here indicating an immediate threat, unlike Durham where the transit supervisor reported he was almost hit. The record shows King's actions did not constitute an immediate threat to life or property as required under RCW 10.93.070(2). We choose not to broaden or water down the meaning of this emergency exception to include speeding such as King's. Furthermore, we note that police officers are still authorized to effect extraterritorial arrests in circumstances where a valid interlocal agreement between jurisdictions exists or where the fresh pursuit exception applies.

CONCLUSION
¶ 23 We hold that King's actions did not constitute an immediate threat to life or property that authorized his arrest under the emergency exception of RCW 10.93.070(2). Thus, we reverse King's conviction for reckless driving under RCW 46.61.500.
WE CONCUR: CHARLES W. JOHNSON, JAMES M. JOHNSON, DEBRA L. STEPHENS, TOM CHAMBERS, JJ.
CHAMBERS, J. (concurring).
¶ 24 I was fully content to sign the majority, but the dissent has driven me over the great abyss and caused me to pick up pen and paper. I have no doubt that Officer Jeff Starks is a fine and principled officer of the law.
¶ 25 But Officer Starks testified that he does not drive motorcycles and does not have a motorcycle endorsement. It is very clear to me from his testimony that he is not intimately versed in the safe operation of motorcycles. I say that as a person who has ridden motorcycles all of his adult life and who owns and operates several, some designed for highway use only, some designed for off-road use only, and some for both. The appropriate use of pegs (or running boards) is important for the safe operation of motorcycles designed for either.[1] At the time Officer Starks observed Tyler King standing on the pegs for a few seconds, King was traveling the speed limit on I-5.[2] Opinion testimony, particularly that offered by law enforcement officers, can be very powerful and very prejudicial. Given the officer's admitted *649 lack of experience with motorcycles, he should not have given opinion testimony on the safe operation of motorcycles. See generally State v. Jacobsen, 78 Wash.2d 491, 496-97, 477 P.2d 1 (1970) (even police officers must be qualified to testify). However, we cannot fault either Officer Stark for answering or the trial judge for admitting the answer to a question to which there was no objection.
¶ 26 I concur fully with the majority opinion.
FAIRHURST, J. (concurring).
¶ 27 I agree with the majority that Tyler Sherwood King's actions did not constitute an immediate threat to life or property that authorized his arrest under the emergency exception of RCW 10.93.070(2). Given this decision, in my view, it is unnecessary to discuss, even as dicta, the officer's opinion testimony.
WE CONCUR: BARBARA A. MADSEN, J.
ALEXANDER, C.J. (dissenting).
¶ 28 I disagree with the majority's holding that Vancouver Police Officer Jeff Starks was not authorized to issue a citation to Tyler King for reckless driving under the emergency exception to territorial jurisdiction, RCW 10.93.070(2).[1] Given the facts of this case, I would hold that Officer Starks had authority to cite King because King's actions presented "an emergency involving an immediate threat to human life or property." RCW 10.93.070(2). I would also hold that the trial court's admission of Officer Starks' opinion testimony was not a manifest constitutional error. Thus, it cannot be challenged for the first time on appeal.[2] I would, therefore, uphold King's reckless driving conviction, and, accordingly, I dissent.
¶ 29 The trial judge held that reckless driving is an emergency situation pursuant to RCW 10.93.070(2). Although I would not broaden the emergency exception to territorial jurisdiction to include all reckless driving per se, it is nonetheless my view that the trial judge was justified in concluding that the exception applies in this case. The legislature enacted the emergency exception as a part of the Washington Mutual Aid Peace Officer Powers Act of 1985, chapter 10.93 RCW, and directed that the chapter be "liberally construed to effectuate the intent of the legislature to modify current restrictions upon the limited territorial and enforcement authority of general authority peace officers and to effectuate mutual aid among agencies." RCW 10.93.001(3). Considering the legislature's intent to expand the authority of law enforcement officers to act and the undisputed fact that Officer Starks observed King riding his motorcycle in the state of Washington at a speed of 70 m.p.h. before standing on the pegs of the motorcycle for several seconds and then accelerating to pass a truck, it is my conclusion that "an emergency involving an immediate threat to human life or property" pursuant to RCW 10.93.070(2) was presented by King's actions.[3] That being the case, Officer Starks *650 had authority to stop King and cite him for reckless driving.
¶ 30 Because the majority has concluded otherwise, it has declined to decide whether King's challenge to Officer Starks' opinion testimony[4] can be considered for the first time on appeal. Majority at 647. As it is my view that the citation of King was authorized pursuant to the emergency exception, I must decide this question. King contends that he may challenge the admission of Officer Starks' opinion testimony, which the State correctly concedes was improper, because it was a manifest error affecting a constitutional right. Pet'r's Opening Br. at 11-13; see RAP 2.5(a)(3). "This exception [to the general rule that appellate courts will not consider issues raised for the first time on appeal] is a narrow one, and we have found constitutional error to be manifest only when the error caused actual prejudice or practical and identifiable consequences." State v. Montgomery, 163 Wash.2d 577, 595, 183 P.3d 267 (2008) (citing State v. Kirkman, 159 Wash.2d 918, 934-35, 155 P.3d 125 (2007)). "Admission of witness opinion testimony on an ultimate fact, without objection, is not automatically reviewable as a `manifest' constitutional error." Kirkman, 159 Wash.2d at 936, 155 P.3d 125. Thus, King must show actual prejudice before we may review Officer Starks' opinion testimony.
¶ 31 "Important to the determination of whether opinion testimony prejudices the defendant is whether the jury was properly instructed." Montgomery, 163 Wash.2d at 595, 183 P.3d 267 (citing Kirkman, 159 Wash.2d at 937, 155 P.3d 125). In Kirkman, we concluded that the defendant was not prejudiced by allegedly improper opinion testimony on witness credibility in part because the jury was instructed that jurors "`are the sole judges of the credibility of the witnesses'" and that jurors "`are not bound'" by expert witness opinions. Kirkman, 159 Wash.2d at 937, 155 P.3d 125 (quoting Clerk's Papers). In Montgomery, where "[v]irtually identical" instructions were given, we likewise concluded that the record did not establish that the challenged opinion testimony resulted in actual prejudice. Montgomery, 163 Wash.2d at 596, 183 P.3d 267 (citing Report of Proceedings (RP)). Here, the record similarly demonstrates that the jurors received jury instructions that were generally consistent with those in Kirkman and Montgomery.[5] The jurors were also instructed that they could consider seven factors "[i]n considering a witness's testimony." RP at 263.[6] There is no evidence that the jury was unfairly influenced, and "we should presume the jury followed the court's instructions absent evidence to the contrary." Montgomery, 163 Wash.2d at 596, 183 P.3d 267 (citing Kirkman, 159 Wash.2d at 928, 155 P.3d 125).
¶ 32 Finally, I note that the record also shows that independent of Officer Starks' opinion testimony, the jury was told by the trial judge that King had been cited and "charged ... with the offense of reckless driving" by a "Vancouver police officer." RP at 92. When the judge invited the prosecutor and defense counsel to introduce themselves and any witnesses to the jury, the prosecutor introduced "Officer Jeffrey Starks of the Vancouver Police Department" as a witness. Id. at 93. Moreover, King's attorney, in his opening statement to the jury, stated that "Officer Starks made a mistake" *651 and that King's conduct "wasn't reckless." Id. at 155-56, 157. It is clear, therefore, that the jury knew, prior to Officer Starks' testifying, that he had cited King for reckless driving. Consequently, it was no surprise for the jury to hear Officer Starks testify that, in his opinion, King's actions constituted reckless driving. The effect of Officer Starks' opinion testimony, if any, was minimal and falls far short of being prejudicial to King.
¶ 33 For the reasons stated above, I would uphold King's conviction for reckless driving. Because the majority does otherwise, I dissent.
WE CONCUR: SUSAN OWENS, J.
NOTES
[1] King filed a pretrial motion to dismiss the reckless driving charge because Starks made the arrest outside his jurisdiction and without the authority of a valid interlocal agreement. The district court found the State had not established there was a valid interlocal agreement authorizing the arrest under RCW 10.93.070(1). Clerk's Papers (CP) at 119 (Findings of Fact and Conclusions of Law (Clark County Dist. Ct. No. 63660)). However the district court upheld the arrest, agreeing with the prosecution that reckless driving, defined as "willful or wanton disregard for the safety of persons or property," falls under the emergency exception of RCW 10.93.070(2). RCW 46.61.500(1) (defining reckless driving and its penalty); see RCW 10.93.070(2) (authorizing a Washington peace officer to enforce traffic or criminal laws across jurisdictions "[i]n response to an emergency involving an immediate threat to human life or property").
[2] We have previously said an appellate court must approach claims of constitutional error asserted for the first time on appeal by first "satisfy[ing] itself that the error is truly of constitutional magnitude  that is what is meant by 'manifest.'" State v. Scott, 110 Wash.2d 682, 688, 757 P.2d 492 (1988). "If the claim is constitutional, then the court should examine the effect the error had on the defendant's trial according to the harmless error standard set forth in Chapman v. California." Id.; see Chapman v. California, 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967) (holding that before an error can be held harmless, the reviewing court must be satisfied beyond a reasonable doubt that the error did not contribute to the defendant's conviction).
[3] 70 Wash.App. 573, 854 P.2d 658.
[4] 159 Wash.2d 918, 155 P.3d 125. Kirkman was decided on April 5, 2007, and the Court of Appeals' ruling denying review was issued more than six months later on September 25, 2007.
[5] Here, there was no claim, nor do the facts support, that King's arrest fell under the "fresh pursuit" exception of RCW 10.93.070(6).
[6] Driving under the influence.
[7] Starks' video recording of the King stop shows the officer driving past the motorcyclist, who had pulled over, and then driving in reverse on the shoulder to reach him.
[1] Because the seats of motorcycles are usually aft or over the rear wheel, safe operation often requires the operator to stand on the pegs when going over bumps because the seat may bounce up.
[2] Officer Starks never testified that King was standing on the seat of his motorcycle.
[1] RCW 10.93.070 provides in part: "[A] general authority Washington peace officer ... may enforce the traffic or criminal laws of this state throughout the territorial bounds of this state....

"....
"(2) In response to an emergency involving an immediate threat to human life or property."
[2] In his opening brief to this court, King claims ineffective assistance of counsel. Pet'r's Opening Br. at 1, 13-16. That question is beyond the scope of our review, however, because King failed to raise it in his motion for discretionary review. RAP 13.7(b); Mot. for Discretionary Review at 1. We granted review to consider the issues presented in King's motion for discretionary review, including, (1) whether Officer Starks' opinion testimony was improper and constituted manifest constitutional error that was not harmless and (2) whether Officer Starks had authority to cite King. Majority at 645.
[3] In his concurrence, Justice Chambers states that Officer Starks "lack[s] experience with motorcycles." Concurrence at 648 (Chambers, J., concurring). Although the officer did not cite any particular experience with motorcycles, he did testify that he has more than 12 years' combined experience as an officer with the Vancouver Police Department and the Kentucky State Police. Report of Proceedings (RP) at 159. He also testified that he was trained in "speed enforcement, DUI [driving under the influence] investigation, accident investigation," "traffic in general," and "the elements of reckless driving." Id. at 160, 171. Moreover, it is my view that one need not be an experienced motorcyclist in order to reasonably conclude that King's actions presented an emergency under RCW 10.93.070(2) whether they occurred on a flat surface or an approach to a "great abyss." Concurrence at 648 (Chambers, J., concurring).
[4] See majority at 645-46 (quoting the relevant portion of Officer Starks' testimony).
[5] The jurors were instructed in relevant part that they were "the sole judges of the credibility of witnesses" and "the sole judges of the value or weight to be given to the testimony of each witness." RP at 263.
[6] These factors were as follows: "the opportunity of the witness to observe or to know the things he or she testifies about: the ability of the witness to observe accurately: the quality of a witness's memory while testifying: the manner of the witness while testifying: any personal interest that the witness might have in the outcome or the issues: any bias or prejudice that the witness may have shown: the reasonableness of the witness's statements in the context of all the other evidence and any other factors that affect ... your evaluation or belief of a witness or your evaluation of his or her testimony." RP at 263.