# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

| | |
|---|---|
| STATE OF WASHINGTON, | No. 54129-7-II |
| Respondent, | |
| v. | UNPUBLISHED OPINION |
| MARK VIRGIL PERRY, JR. II, | |
| Appellant. | |

MAXA, J. – Mark Perry, Jr. appeals his second degree assault conviction. The conviction arose out of an altercation Perry had with a female friend during which he put his forearm around her neck until she went limp. The State charged Perry with assault by strangulation, and Perry claimed self-defense.

We hold that (1) the trial court did not err in failing to sua sponte dismiss a juror who stated during voir dire that the fact his wife had worked with defense counsel would affect his ability to be fair and impartial, (2) the trial court did not deny Perry's constitutional right to confront witnesses when the court granted the State's request to limit his cross-examination of the investigating officer, (3) any error in allowing a witness to testify that it did not appear to her that Perry needed to defend himself was harmless, (4) Perry was not denied a fair trial based on cumulative error, (5) we cannot consider Perry's statement of additional grounds (SAG) claims because they are based on evidence outside the record; and (6) the trial court erred by including a

provision in the judgment and sentence stating that legal financial obligations (LFOs) would accrue interest.

Accordingly, we affirm Perry's conviction, but we remand for the trial court to strike the interest accrual provision for LFOs from the judgment and sentence.

FACTS

*Background*

In July 2019, Perry was living with Cheyanne Kaady at a campground in Skamania County. Perry's friend Tamera Baker lived at a nearby campground. On July 22, Kaady and Baker got into an argument. Baker began yelling at Kaady. Perry did not like the way Baker was talking to Kaady, and he confronted Baker. The two then got into an altercation that resulted in Perry putting his forearm around Baker's neck until she went limp.

Skamania County Sergeant Ryan Taylor investigated the incident. He talked to Baker after the incident and later obtained a written statement from her. Taylor obtained a written statement from Kaady over three months later. The State charged Perry with second degree assault by strangulation or suffocation.

*Motion in Limine re Sergeant Taylor*

Before trial, the State filed a motion in limine to preclude inquiry concerning Taylor's 2011 termination from the Clark County Sheriff's Office (CCSO). The CCSO had alleged that Taylor violated office policy by using the county's mobile phone, vehicle, and data base for personal use. Taylor disputed the CCSO's allegations.

The trial court granted the State's motion, concluding that "any probative value that would be offered in this case is substantially outweighed by any prejudicial effect by having that

issue come up and . . . confuse the jury, essentially turning this into sort of a mini-trial on the issues of whether or not this really occurred." Report of Proceedings (RP) at 53.

*Jury Selection*

During voir dire, 11 potential jurors indicated that they knew Perry's defense counsel. The trial court questioned each one concerning whether this fact would impact their ability to be fair and impartial. Juror 18 stated that his wife worked with defense counsel about 30 years ago for the county and he knew of him in the community. The court then stated, "[S]o your wife's work with him and knowing him through the community. Do you think that's gonna impact your ability to be fair and impartial?" RP at 90. Juror 18 answered, "Yes." RP at 90. Neither the court nor either party followed up on this answer.

The trial court did promptly dismiss two other jurors who stated that their ability to be fair and impartial would be affected because of their knowledge of defense counsel.

Juror 18 later stated that his wife had worked for the sheriff's department in Skamania County. The trial court asked juror 18 whether his wife's work for the sheriff's department would impact his ability to be fair and impartial, and he said that it would not.

The trial court asked all the potential jurors, "Anybody here be unable to assure the court that you will follow the instructions on the law . . . anybody here believe that they would not be able to follow the law. . . anybody here believe they'd be unable to follow the law?" RP at 120. Juror 18 did not respond. The court then asked, "All right, anybody have anything else they would like to add? Anyone else have any other feelings or concerns either one way or another that you think is important to let us know why you may not be able to serve impartially?" RP at 123. Again juror 18 did not respond.

Following this colloquy, several jurors were excused for cause. Juror 18 was not one of them. Perry exercised only five of his seven peremptory challenges, and did not use a peremptory challenge on juror 18. The State also did not use an available peremptory challenge on juror 18. Juror 18 was selected to sit on Perry's jury.

*Trial Testimony*

At trial, Kaady, Baker and Perry all testified about the incident. Taylor testified about his investigation.

Kaady testified that she and Baker were talking when Baker became upset and began yelling at Kaady. Perry did not like the way that Baker was talking to Kaady, and he confronted Baker. Baker picked up a rock. Perry then punched Baker in the face, and Baker dropped the rock. Perry hit Baker in the face a few more times and Baker fought back. Perry then grabbed Baker from behind and started strangling her with his forearm. Baker lost consciousness and went limp twice, and Perry revived her by slapping her in the face.

On redirect, the prosecutor asked Kaady whether it appeared to her that Perry was defending himself. The trial court overruled defense counsel's objection. The prosecutor and Kaady then had the following exchange:

> Q  Did it appear to you the defendant needed to [defend] himself when he was strangling her?
> A  No.
> . . . .
> Q The second time the defendant was strangling her, did it appear the defendant was afraid of Ms. Baker at that point?
> A  Not at all.
> Q  Did it appear to you he needed to [defend] himself?
> A.  Not at all.

RP at 237.

Baker testified that she and Perry were yelling at each other. She denied picking up a rock. She stated that Perry suddenly came up behind her and started choking her. Her body went limp. The next thing she remembered she was on the ground and crawling to her tent. Afterwards, she had bruising on her neck and chin and she had difficulty talking.

Taylor testified about his investigation of the incident and obtaining written statements from Baker and Kaady. He stated that he observed an injury to Baker's chin, which was consistent with strangulation.

Perry testified that he heard Baker and Kaady arguing, and then he started arguing with Baker. When he approached Baker, she grabbed a big rock and tried to hit him with it. In response, Perry grabbed Baker around her neck and throat with his arm. Baker went limp and dropped the rock, and Perry let her go. Perry believed that Baker would have injured him with the rock if he did not take action to disarm her.

The trial court instructed the jury on self-defense. The jury found Perry guilty of second degree assault. The court imposed a $500 crime victim penalty assessment as an LFO. The judgment and sentence contained boiler-plate language that the LFOs imposed would bear interest from the date of the judgment until full payment.

Perry appeals his conviction and the LFO interest accrual provision in the judgment and sentence.

ANALYSIS

A.    TRIAL COURT'S FAILURE TO DISMISS JUROR

Perry argues that his right to a fair and impartial jury was violated because the trial court did not dismiss juror 18 after he stated in voir dire that his familiarity with defense counsel would impact his ability to be fair and impartial. We disagree.

5

1.    Legal Principles

Article I, section 22 of the Washington Constitution and the Sixth and Fourteenth Amendments to the United States Constitution guarantee a defendant the right to trial by an impartial jury. *State v. Phillips*, 6 Wn. App. 2d 651, 661, 431 P.3d 1056 (2018). To protect this right, "the trial court will excuse a juror for cause if the juror's views would preclude or substantially hinder the juror in the performance of his or her duties in accordance with the trial court's instructions and the jurors' oath." *State v. Lawler*, 194 Wn. App. 275, 281, 374 P.3d 278 (2016).

At trial, either party may challenge a prospective juror for cause. RCW 4.44.130. Actual bias is a ground for challenging a juror for cause. RCW 4.44.170(2). Actual bias occurs when there is "the existence of a state of mind on the part of the juror in reference to the action, or to either party, which satisfies the court that the challenged person cannot try the issue impartially and without prejudice to the substantial rights of the party challenging." RCW 4.44.170(2). Allowing a biased juror to serve on a jury requires a new trial without the defendant having to show prejudice. *Lawler*, 194 Wn. App. at 282.

Both RCW 2.36.110 and CrR 6.4(c)(1) require a trial court to dismiss a biased juror sua sponte, even without a challenge from a party. *Lawler*, 194 Wn. App. at 282, 284. However, we review for an abuse of discretion a trial court's decision not to dismiss a juror. *Id.* at 282. And the "trial court is in the best position to evaluate whether a juror must be dismissed" because unlike an appellate court, a trial court can assess the juror's "tone of voice, facial expressions, body language, or other forms of nonverbal communication." *Id.* at 287.

2.     Analysis

Five factors support our conclusion that the trial court did not abuse its discretion in failing to sua sponte dismiss juror 18.

First, juror 18's answer was at least slightly equivocal. He did not state that he could not be fair and impartial. He stated only that his wife working with defense counsel and his knowledge of defense counsel in the community would "impact" his ability to be fair and impartial. RP at 90.

Second, the trial court summarily dismissed two other jurors who indicated that they could not be fair and impartial because they knew defense counsel. Therefore, there must have been something about juror 18's facial expressions or body language or the nature of his knowledge of defense counsel that caused the trial court to believe that his answer did not warrant dismissal. And the trial court was in the best position to assess whether juror 18 could be fair and impartial.

Third, juror 18 did not state whether he would be biased in favor of defense counsel or against defense counsel. He stated only that his wife had worked with him. As a result, defense counsel may actually have wanted juror 18 to serve on the jury. In that situation, the trial court may have decided to defer to the parties' assessment of juror 18. As this court noted in *Lawler*, "the trial court must be careful not to interfere with a defendant's strategic decisions regarding jury selection." 194 Wn. App. at 288.

Fourth, both parties had peremptory challenges available that that they did not use on juror 18. This fact leads to the presumption that neither had an objection to juror 18 serving on the jury despite his indication that his ability to be fair and impartial would be impacted.

Finally, juror 18 did not respond when the trial court asked the entire venire whether anyone had any concerns about being able to serve impartially. This nonresponse provided at least some indication that juror 18 believed he could be impartial.

The standard of review here is abuse of discretion. *Lawler*, 194 Wn. App. at 282. We hold that the trial court did not abuse its discretion in not dismissing juror 18.

B.    LIMITATION ON CROSS-EXAMINATION

Perry argues that the trial court violated his constitutional right to confront and cross-examine witnesses by precluding his questioning of Taylor regarding Taylor's 2011 termination from the CCSO. We disagree.

1.    Legal Principles

The confrontation clauses of the Sixth Amendment to the United States Constitution and article I, section 22 of the Washington Constitution guarantee the right of a criminal defendant to confront adverse witnesses through cross-examination. *State v. Lee*, 188 Wn.2d 473, 486-87, 396 P.3d 316 (2017). But the right to cross examine witnesses is not absolute. *Id.* at 487. Trial courts have wide latitude to impose reasonable limits on cross-examination if, among other things, the evidence is marginally relevant and would lead to confusion of issues. *Id.*

Perry wanted to introduce evidence regarding the circumstances of Taylor's termination from the CCSO to attack his credibility. Under ER 608(b), a party generally cannot present extrinsic evidence to prove specific instances of a witness's conduct to attack the witness's credibility. But a party may – at the trial court's discretion – cross-examine a witness regarding a specific instance of the witness's prior conduct if the conduct is probative of the witness's truthfulness or untruthfulness. ER 608(b). When exercising its discretion under ER 608(b),

" 'the trial court may consider whether the instance of misconduct is relevant to the witness' veracity on the stand and whether it is germane or relevant to the issues presented at trial.' " *State v. Lile*, 188 Wn.2d 766, 783, 398 P.3d 1052 (2017) (quoting *State v. O'Connor*, 155 Wn.2d 335, 349, 119 P.3d 806 (2005)). And prior instances of misconduct used to attack credibility may not be admissible if they are too remote in time. *State v. McSorley*, 128 Wn. App. 598, 613-14, 116 P.3d 431 (2005).

In addition, under ER 403, relevant evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury. A trial court properly excludes evidence that is remote, vague, or speculative because such evidence can greatly confuse the issues and delay the trial. *State v. Bass*, ___ Wn. App. 2d ___, 491 P.3d 988, 1009 (2021).

We review for abuse of discretion a trial court's limitation of the scope of cross-examination. *Lee*, 188 Wn.2d at 486. An abuse of discretion occurs when the court's decision is manifestly unreasonable or based on untenable grounds. *Id.*

2. Analysis

Here, the trial court excluded evidence that the CCSO had alleged that Taylor violated office policy by using the county's mobile phone, vehicle, and data base for personal use. However, Taylor disputed this allegation. The trial court concluded that any probative value that would be offered in this case was substantially outweighed by any prejudicial effect and that the evidence would confuse the jury by turning Perry's trial into a mini-trial about Taylor's termination. We agree that confusion of the issues was a legitimate concern.

In addition, the evidence had minimal relevance. Taylor was not an indispensable witness at trial. He was not present at the time of the incident like the three other persons who

9

testified. He merely discussed his investigation and the written statements he obtained. The only substantive testimony he provided was that Baker's chin injury was consistent with strangulation. But whether or not Taylor used public property for personal use had no bearing on that observation. As a result, the potential for confusion of the issues outweighed the evidence's minimal relevance.

Accordingly, we hold that the trial court did not abuse its discretion in limiting the scope of Perry's cross-examination of Taylor.

C.       OPINION TESTIMONY REGARDING SELF-DEFENSE

Perry argues that the trial court erred in allowing Kaady to provide improper opinion testimony about whether Perry was acting in self-defense. We conclude that any error was harmless.

1.     Legal Principles

In general, no witness may offer opinion testimony about the defendant's guilt. *State v. King*, 167 Wn.2d 324, 331, 219 P.3d 642 (2009). This rule applies to statements regarding guilt made both directly or by inference. *Id.* Such opinion testimony is unfairly prejudicial to the defendant because determining the defendant's guilt is the jury's exclusive province. *Id.* "Impermissible opinion testimony regarding the defendant's guilt may be reversible error because such evidence violates the defendant's constitutional right to a jury trial, which includes the independent determination of the facts by the jury." *State v. Quaale*, 182 Wn.2d 191, 199, 340 P.3d 213 (2014).

However, lay witnesses may testify to opinions or inferences that are "rationally based on the perception of the witness." ER 701(a).

We review a trial court's evidentiary rulings for an abuse of discretion. *State v. Slater*, 197 Wn.2d 660, 667, 486 P.3d 873 (2021). An abuse of discretion occurs when the court's decision is manifestly unreasonable or based on untenable grounds or reasons. *Id.*

2. Harmless Error

Here, the prosecutor twice asked Kaady if it appeared to her that when Perry was strangling Baker he "needed to defend[ ] himself." RP at 237. Kaady responded in the negative. The State notes that these questions arguably were improper. We assume without deciding that Kaady provided improper opinion testimony.

Because impermissible opinion testimony violates the constitutional right to a fair trial, we apply the constitutional harmless error standard. *Quaale*, 182 Wn.2d at 201-02. For an error to be harmless, the State must establish "beyond a reasonable doubt that any reasonable jury would have reached the same result absent the error." *Id.* at 202.

Here, the jury heard testimony from all three participants in the incident. The jury could evaluate the credibility of the witnesses and determine for themselves whether Perry was acting in self-defense when he strangled Baker. As a result, Kaady's perception regarding whether Perry needed to act in self-defense was of minor significance compared to the eyewitness testimony about what actually happened.

We conclude that any reasonable jury would have reached the same result even without Kaady's testimony. Therefore, we hold that any error in allowing that testimony was harmless.

D.    CUMULATIVE ERROR

Perry argues that cumulative error denied him a fair trial. Under the cumulative error doctrine, the defendant must show that the combined effect of multiple errors requires a new trial. *State v. Clark*, 187 Wn.2d 641, 649, 389 P.3d 462 (2017). Here, Perry has not

11

demonstrated that any error denied him a fair trial. Therefore, we hold that the cumulative error doctrine is inapplicable.

E.  SAG CLAIMS

In his SAG, Perry argues that (1) he was prevented from questioning Kaady about charges that were dropped in exchange for her testimony, (2) he wanted to fire defense counsel because communication between the two broke down, (3) counsel neglected to question Kaady about her mental disorder and that she had accused her former spouse of assault, and (4) he was stressed because of a sexual assault while he was in the county jail.

These claims rely on matters outside the record and the record is insufficient to evaluate them. As a result, we cannot consider these assertions in this direct appeal. *State v. Alvarado*, 164 Wn.2d 556, 569, 192 P.3d 345 (2008). Instead, they must be raised in a personal restraint petition. *Id*.

F.  INTEREST ACCRUAL PROVISION

Perry argues that the interest accrual provision for nonrestitution LFOs must be stricken. RCW 10.82.090(1) states, "As of June 7, 2018, no interest shall accrue on nonrestitution legal financial obligations." The trial court entered Perry's judgment and sentence in 2019. Therefore, we remand for the trial court to strike the interest accrual provision regarding nonrestitution LFOs.

CONCLUSION

We affirm Perry's conviction, but we remand for the trial court to strike the interest accrual provision for LFOs from his judgment and sentence.

No. 54129-7-II

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

_____
MAXA, J.

We concur:

_____
LEE, C.J.

_____
VELJACIC, J.