# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | |
|---|---|
| STATE OF WASHINGTON,<br><br>               Respondent,<br><br>        v.<br><br>ANRIO DEMETREOUS ADAMS SR.,<br><br>               Appellant. | DIVISION ONE<br><br>No. 85913-7-I<br><br>UNPUBLISHED OPINION |

DWYER, J. — A jury convicted Anrio Adams of residential burglary and felony violation of a no-contact order. Adams challenges his convictions, alleging several instances of prosecutorial misconduct. The State concedes that the prosecutor engaged in misconduct, that the cumulative effect of the misconduct was prejudicial, and that Adams is entitled to a new trial. We accept the State's concession, reverse Adams's convictions, and remand for a new trial.

I

On April 6, 2022, police officers Andrew Huerta and Carl Buster travelled to a Centralia residence in response to a 911 telephone call. The officers were acquainted with a person who lived at the residence, C.M.

Officer Buster arrived first and observed a man walk from the residence to a vehicle parked outside, and then return to the residence. The officers also learned from "dispatch" about the existence of a no-contact order prohibiting contact between C.M. and the registered owner of the vehicle, Anrio Adams.

The officers contacted C.M., who did not appear to want help from the police and denied that Adams was with her. Officer Buster received a copy of Adams's driver's license, and noted that the photograph appeared to depict the person the officer had seen walking between the residence and the vehicle. After the officers obtained a search warrant and warned the occupants that they were preparing to enter the residence, a man, later identified as Adams, came outside. The officers arrested him.

The State charged Adams with residential burglary and felony violation of a court order—both offenses designated as crimes of domestic violence. At trial, the State presented the testimony of Officer Buster, Officer Huerta, and a Department of Licensing employee who testified about records related to C.M. and confirmed that, according to Department records, her date of birth matched the date listed on the no-contact order. A jury convicted Adams as charged.

II

Adams raises several claims of prosecutorial misconduct. Specifically, Adams contends that the State (1) improperly elicited and relied on the opinion testimony of the two police witnesses to establish guilt, (2) violated a limiting instruction, and (3) improperly vouched for/bolstered the law enforcement witnesses in closing remarks.[1] The State concedes that the conduct Adams identifies was improper. We accept the State's concession.

---

[1] Adams also alleges that the prosecutor engaged in misconduct by denigrating defense counsel and arguing facts not in evidence. However, we agree with the State that the prosecutor did not denigrate defense counsel when he argued that the defense theory required the jury to "ignore" some evidence presented. The argument merely highlighted the parties' disagreement as to whether the State's evidence satisfied its burden of proof. Moreover, to the extent the prosecutor argued that the relevant court documents bore the defendant's signature, the

Witness testimony that opines on the defendant's guilt unfairly invades the province of the jury. State v. King, 167 Wn.2d 324, 331, 219 P.3d 642 (2009). Opinion testimony by law enforcement officers may also carry a "'special aura of reliability'" and therefore be especially prejudicial to a defendant. King, 167 Wn.2d at 331 (quoting State v. Kirkman, 159 Wn.2d 918, 928, 155 P.3d 125 (2007)).

Here, in order to prove both charges, the State had to establish that Adams, the defendant, was the same person who was subject to a no-contact order and had two prior convictions for violating court orders.[2] Former RCW 26.50.110 (1)(a), (5) (2019); RCW 9A.52.025. To satisfy its burden of proof, the State was required to do more than rely on court orders and judgments that bore the same name as the defendant on trial. State v. Huber, 129 Wn. App. 499, 501-03, 119 P.3d 388 (2005) (because multiple individuals may share the same name, the prosecution must show by independent evidence that the person named in the document is the defendant on trial and can meet its burden by, for example, presenting booking photographs, fingerprints, eyewitness identifications, a certified copy of a driver's license, or other distinctive personal information). But in questioning both officers, the State repeatedly elicited opinion testimony to establish identity, by asking, for instance, whether the person the officers arrested was the "same person that was the subject of a no-contact order." The State also questioned the officers about "verifying" Adams's

argument was based on the evidence (the documents admitted at trial). The jury was able to evaluate the persuasiveness of the argument based on that evidence.
   [2] The State relied on the violation of the no-contact order to establish that Adams entered or remained in the residence unlawfully for purposes of residential burglary.

prior convictions for violating no-contact orders, and as to each of the criminal judgments admitted, elicited testimony that the documents "relate" to Adams, the defendant.

Adams's criminal liability depended on him being the person to whom the no-contact order and prior judgments pertained. The only disputed issue in the case was whether the "Adams" who was on trial was the same "Adams" as was referenced in the various documents. In the specific context of this case, and especially in view of the witnesses' law enforcement status and the lack of factual foundation for the line of questioning, the elicited testimony amounted to improper opinion testimony as to defendant Adams's guilt.

Another instance of misconduct relates to the trial court's limiting instruction which provided that information the officers learned from "dispatch" was admitted "solely" to provide "context for why the officers acted the way they did," and was not to be considered as "substantive evidence." Yet, orally, and in power point slides summarizing the evidence, the prosecutor encouraged the jury to consider the information provided by dispatch without limitation. The State concedes prejudicial misconduct, and we agree. See State v. Fisher, 165 Wn.2d 727, 747-49, 202 P.3d 937 (2009) (State's presentation of evidence of physical abuse, in spite of pretrial ruling conditioning admission of such evidence on the defense raising issue of delayed reporting, amounted to misconduct).

Finally, it is generally improper for prosecutors to bolster the character of law enforcement witnesses. State v. Jones, 144 Wn. App. 284, 293, 183 P.3d 307 (2008). Improper vouching may occur when the prosecution places the

"'prestige of the government behind the witness'" or suggests there is evidence not presented to the jury that supports the witness's testimony. State v. Stotts, 26 Wn. App. 2d 154, 167, 527 P.3d 842 (2023) (quoting State v. Coleman, 155 Wn. App. 951, 957, 231 P.3d 212 (2010)).

In response to the defense argument that the evidence was insufficient to establish beyond a reasonable doubt that the person named in the court documents was the defendant, the State argued that the jury should credit the police officers' testimony that "each document relates to [the] defendant" because "[t]hese are police officers, professionals doing their job," and because certain aspects of identification are verified upon arrest and booking. As Adams contends, and the State appropriately concedes, this argument amounted to improper vouching and/or bolstering.

III

We next consider whether these instances of improper conduct by the State unfairly prejudiced Adams. Adams argues that the misconduct cumulatively prejudiced him so as to warrant a new trial. The State concedes that Adams should receive a new trial. We agree.

The standard of review to determine whether the defendant was prejudiced depends on whether the defendant objected to the conduct. See State v. Emery, 174 Wn.2d 741, 760, 278 P.3d 653 (2012). "If the defendant objected at trial, the defendant must show that the prosecutor's misconduct resulted in prejudice that had a substantial likelihood of affecting the jury's verdict." Emery, 174 Wn.2d at 760.

"If the defendant did not object at trial, the defendant is deemed to have waived any error, unless the prosecutor's misconduct was so flagrant and ill intentioned that an instruction could not have cured the resulting prejudice." Emery, 174 Wn.2d at 760-61. Under this heightened standard, the defendant must show both that a curative instruction would not have obviated the prejudicial effect and that the misconduct resulted in prejudice that had a substantial likelihood of impacting the verdict. Emery, 174 Wn.2d at 761. But even when one instance of improper conduct is not prejudicial, "the cumulative effect of repetitive prosecutorial misconduct may be so flagrant that no instruction or series of instructions could erase their combined prejudicial effect." State v. Cook, 17 Wn. App. 2d 96, 106, 484 P.3d 13 (2021).

Adams did not object to the State's closing remarks and objected to some, but not all, of the questions eliciting improper opinion testimony. The State appears to suggest that the improper comments in closing remarks could, by themselves, meet the heightened prejudice standard because the court provided a limiting instruction, which was ineffective due to the prosecutor's arguments. But we need not decide whether any instance, standing alone, rose to the level of incurable misconduct. We say this because, collectively, they do. As a result of the State's conduct, the jury (1) repeatedly heard law enforcement witnesses testify, without factual foundation, that in their opinion, Adams was the person subject to the no-conduct order and had been previously convicted of violating court orders; (2) learned that they could consider information provided by dispatch about a no-contact order applicable to Adams and his criminal history as

6

evidence of guilt; and (3) heard the prosecutor's opinion that the testimony linking Adams, the defendant, to the relevant documents was entitled to great weight because of the witnesses' law enforcement status and because of police procedures about which no witness testified. We accept the State's concession and conclude that, cumulatively, these instances are so flagrant that no instruction or series of instructions could cure their combined prejudicial effect. We accept the State's concession that Adams is entitled to a new trial due to prosecutorial misconduct.

We reverse Adams's convictions and remand for further proceedings consistent with this opinion. Given our remand for retrial, it is unnecessary to address Adams's remaining assignments of error.

Reversed and remanded.

Dwyer, J.

WE CONCUR:

Díaz, J.                    Smith, C.J.