IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

FILED
COURT OF APPEALS
DIVISION II
2015 AUG 18 AM 9: 05
STATE OF WASHINGTON
BY_____
DEPUTY

DIVISION II

STATE OF WASHINGTON,

No. 46518-1-II

Respondent,

v.

CHERYL STRONG,

UNPUBLISHED OPINION

Appellant.

MELNICK, J. — Cheryl Strong appeals her felony harassment[1] convictions, arguing that the trial court erred by admitting three of her prior convictions, that a police officer provided inadmissible opinion testimony which denied her a fair and impartial trial, and that her counsel provided ineffective assistance because he both failed to request a limiting instruction relating to her prior convictions and failed to object to the officer's opinion testimony. Lastly, Strong claims cumulative errors denied her a fair trial.

We disagree with Strong. The trial court did not abuse its discretion by admitting Strong's prior convictions and her lawyer's decision to not request a limiting instruction on the prior convictions was a tactical decision. Strong cannot raise the opinion testimony error for the first time on appeal because it does not constitute a manifest error affecting a constitutional right.[2] The alleged opinion testimony at issue did not invade the province of the jury; therefore, Strong fails to show that her counsel was deficient for not objecting to the testimony. Finally, Strong's cumulative error claim is without merit. We affirm.

---

[1] RCW 9A.46.020(1)(a)(i), (2)(b)

[2] RAP 2.5(a)(3)

## FACTS

In anticipation of moving to a new residence, Strong called her son's elementary school to report a change of address. Unfortunately, a misunderstanding arose between Strong and school personnel about her new address and its effective date. When Strong's son did not arrive home on the school bus as she expected, Strong called the school in a panicked state and demanded to know what had been done with her son. A school secretary advised Strong that her son had been put on a school bus destined for her new address. Strong drove to the new address, but she could not locate her son. Strong called the school again, but no one answered her call. She left the following message on the school's voice mail system: "Sorry, [son's name], but I'm gonna fucking shoot everybody that goes to your fucking school, works there." Ex. 1. Strong's fiancé later found Strong's son shortly thereafter.

The following morning Strong sent her son to school as usual. Later that morning, the school secretary and superintendent listened to Strong's threatening voicemail message. They immediately called 911 and placed the school campus[3] in lockdown status. Deputy Robert Nelson responded to the school where he listened to the message. He recognized Strong's voice on the message.

Strong learned about the school's lockdown and called to find out if she could pick up her son. The school initially said no, but at Deputy Nelson's direction, the school secretary called Strong back and told her that she could pick up her son. Deputy Nelson arrested Strong when she arrived at the school.

---

[3] The campus included an elementary school, a junior-senior high school, head start program, the district office, and the transportation department.

The State charged Strong with two counts of felony harassment (threats to kill). They also charged her with the aggravating factor that the offenses involved a destructive and foreseeable impact on persons other than the direct victims.[4]

The case proceeded to trial in May 2014. The State provided notice to Strong that it intended to impeach her with four prior convictions if she testified at trial. Those convictions were: forgery, theft in the second degree, theft in the first degree, and burglary in the second degree.[5] Strong objected to the use of three of the convictions. She argued that because more than ten years had elapsed since the dates of conviction or release from confinement, ER 609 precluded their admission because the probative value of the evidence did not substantially outweigh its prejudicial effect. The trial court ruled that all four convictions would be admissible for impeachment if Strong testified. Strong did not request a limiting instruction for the jury's use of this evidence.

Deputy Nelson testified at trial that he instructed the school secretary to contact Strong and advise her that she could pick up her son at the school during the lockdown if she described the vehicle she would be driving and identified any people who would be accompanying her. The prosecutor followed up by asking Deputy Nelson, "Why did you do that?" Report of Proceedings (RP) at 57. Deputy Nelson responded: "So I would know what she was driving, who might be with her as I contacted her. *At this point in time I believed she committed this crime.*" RP at 57 (emphasis added). Strong did not object to this testimony.

---

[4] RCW 9.94A.535(2)(r).

[5] More than 10 years had elapsed since Strong's convictions for and confinement on any of the theft or burglary convictions. The forgery occurred in 2004.

Strong also testified at trial. She admitted leaving the message on the school voicemail system but explained that she thought she was only talking to herself, she did not intend to harm anyone, and the message was inadvertently recorded. Strong also acknowledged her prior criminal history, including forgery, theft, and burglary convictions.

A jury found Strong guilty as charged. It also found the State proved the aggravating factor beyond a reasonable doubt. Strong appeals.

## ANALYSIS

I.  STRONG'S PRIOR CONVICTIONS

A.  Admission of Prior Convictions for Impeachment

Strong has four prior convictions involving dishonesty: theft in the second degree, forgery, theft in the first degree, and burglary in the second degree. Strong argues that the trial court erred by admitting evidence of her theft and burglary convictions because the trial court failed to meaningfully balance their probative value and prejudicial effect as required under ER 609(b) for convictions more than 10 years old.[6] We disagree.

"Evidence of prior convictions may be admissible for the purpose of attacking the credibility of a witness, including a criminal defendant, under ER 609." *State v. Bankston*, 99 Wn. App. 266, 268, 992 P.2d 1041 (2000). However if a period of more than ten years has passed since the conviction or release from confinement imposed for the conviction, evidence of the conviction is admissible only if the court determines that the probative value of admitting the conviction substantially outweighs its prejudicial effect. ER 609(b). To perform the balancing test required

---

[6] Strong concedes that the forgery conviction was admissible to impeach her credibility as a witness without balancing because it involves dishonesty *and* is not more than ten years old. *See State v. Teal*, 117 Wn. App. 831, 843, 73 P.3d 402 (2003), *aff'd*, 152 Wn.2d 333, 96 P.3d 974 (2004); *State v. Russell*, 104 Wn. App. 422, 434, 16 P.3d 664 (2001).

by ER 609(b) a trial court must consider the following factors: "'(1) the length of the defendant's criminal record; (2) remoteness of the prior conviction; (3) nature of the prior crime; (4) the age and circumstances of the defendant; (5) centrality of the credibility issue; and (6) the impeachment value of the prior crime.'" *State v. Rivers*, 129 Wn.2d 697, 705, 921 P.2d 495 (1996) (quoting *State v. Alexis*, 95 Wn.2d 15, 19, 621 P.2d 1269 (1980)). The trial court is required to balance the probative value against unfair prejudice on the record. *State v. Russell*, 104 Wn. App. 422, 433, 16 P.3d 664 (2001).

We review a trial court's ruling under ER 609 for an abuse of discretion. *State v. Teal*, 117 Wn. App. 831, 844, 73 P.3d 402 (2003), *aff'd*, 152 Wn.2d 333, 96 P.3d 974 (2004); *Bankston*, 99 Wn. App. 268. An abuse of discretion occurs when the trial court's ruling is manifestly unreasonable or is based on untenable or unreasonable grounds. *Bankston*, 99 Wn. App. at 268.

Strong argues that the trial court failed to conduct a meaningful balancing test as required by ER 609(b) prior to admitting her theft and burglary convictions. But the record reflects otherwise. The trial court provided the following analysis on the record:

> With respect to the Theft 2, which was done—she was sentenced May 17 of '02. The Theft 1 she was sentenced to in 11-22-01, and the Burglary 2 she was sentenced 5-4-01, so we're talking about not a great deal of time for the commission of those, prior to the time that she committed the forgery, which is within the 10 year period for time.
>
> She has what I would consider to be a moderately lengthy criminal history. The prior convictions, as far as I'm concerned are not all that remote. The nature of the prior crimes we're talking about Burglary and Theft and Forgery and they are all—they all deal with the issue of taking a property and/or other crimes or acts of dishonesty.
>
> Assuming she takes the stand—plus she was 35, she wasn't a young adult at the time that these were committed, the issue of credibility here weighs heavily. If she denies making the call which she apparently did, when she talked to law enforcement, denied making a threat, said she didn't mean anything, the jury needs to have the opportunity to balance those claims, with what her criminal history shows in the past.

Balancing—looking at the elements that I'm supposed to look at, as far as balancing them, my decision is all . . . of them are available for use by the State under rule 609 for impeachment should the defendant choose to testify.

RP at 17-18.

Strong contends that the trial court relied on unsuitable considerations—including the fact that Strong was not a young adult at the time of the commission of the prior offenses and the crimes were committed near the 10-year limitation. But the trial court's observations on those issues were part of its weighing process.

Age is relevant because crimes committed at a young age may not be as probative of a person's truthfulness as crimes committed as an adult. *State v. Hardy*, 133 Wn.2d 701, 709, 946 P.2d 1175 (1997). Here, the significance of the trial court's observation that Strong was approximately 35 years old at the time of the prior convictions is that Strong committed the crimes well into her adulthood. Thus, the convictions were more likely to be relevant to her current credibility than if she had committed the crimes as a young adult.

The remoteness of prior convictions is significant because the older the conviction, the less probative it is of the defendant's credibility. *United States v. Hayes*, 553 F.2d 824, 828 (2d Cir. 1977); *Jones*, 101 Wn.2d at 121. Here, the trial court noted Strong's burglary and theft convictions fell just outside the 10-year limitation of ER 609(b). This rationale is significant because the trial court considered the time frame to be "not all that remote;" *i.e.*, still probative of Strong's truthfulness. RP at 17. Significantly, the trial court reasoned that the jury needed to be made aware of Strong's prior convictions because credibility would be a central part of the case if she testified, and the prior convictions the State sought to admit were all crimes involving dishonesty.

The trial court considered all of the suggested factors, made findings on the record about those factors, and came to a reasonable conclusion. Therefore, the trial court did not abuse its discretion by admitting Strong's prior convictions for burglary and theft under ER 609.

B.    Ineffective Assistance of Counsel—Failure to Request a Limiting Instruction

Strong argues that she received ineffective assistance of counsel because her lawyer failed to propose a limiting instruction on the jury's use of her prior convictions. We disagree.

A defendant claiming ineffective assistance of counsel has the burden to establish both that counsel's representation was deficient and that the representation prejudiced the defendant's case. *Strickland v. Washington*, 466 U.S. 668, 700, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984); *State v. Grier*, 171 Wn.2d 17, 32-33, 246 P.3d 1260 (2011). Failure to establish either prong is fatal to an ineffective assistance of counsel claim. *Strickland*, 466 U.S. at 700. A lawyer's representation is deficient if after considering all of the circumstances, it falls below an objective standard of reasonableness. *Grier*, 171 Wn.2d at 33. Deficient representation prejudices a defendant if there is a "reasonable probability that, but for counsel's deficient [representation], the outcome of the proceedings would have been different." *State v. Kyllo*, 166 Wn.2d 856, 862, 215 P.3d 177 (2009).

Our scrutiny of counsel's representation is highly deferential; we strongly presume that counsel was effective. *Grier*, 171 Wn.2d at 33. "If trial counsel's conduct can be characterized as legitimate trial strategy or tactics, it cannot serve as a basis for a claim that the defendant received ineffective assistance of counsel." *State v. McNeal*, 145 Wn.2d 352, 362, 37 P.3d 280 (2002). We can presume counsel did not request limiting instructions to avoid reemphasizing damaging evidence. *State v. Dow*, 162 Wn. App. 324, 335, 253 P.3d 476 (2011); *State v. Yarbrough*, 151 Wn. App. 66, 90, 210 P.3d 1029 (2009).

Strong argues that her lawyer should have requested a limiting instruction concerning the use of her prior convictions. Strong's credibility was crucial because she admitted to leaving the threatening message on the school's voicemail and her defense was that she had inadvertently left the message and did not knowingly threaten anyone. In this context, counsel may have decided not to request a limiting instruction to avoid emphasizing Strong's damaging criminal history for crimes of dishonesty.

Although a danger existed that the jury might consider the evidence of Strong's prior convictions for an improper purpose, we note that the risk was reduced because Strong's prior convictions were for crimes of dishonesty. A jury would be less likely to consider her prior convictions as evidence of guilt or propensity to commit the violent crimes at issue here. Counsel likely believed that the jury would use the prior convictions for their obvious and permissible purposes, *i.e.*, to evaluate Strong's credibility and honesty.

Because defense counsel's failure to request a limiting instruction on the use of the prior convictions was a legitimate trial tactic to avoid emphasizing Strong's prior convictions, Strong's ineffective assistance of counsel claim fails.

II.     OPINION TESTIMONY

A.     Fair and Impartial Trial

Strong argues that she was denied a fair and impartial trial because of Deputy Nelson's opinion testimony. We do not decide this issue because Strong did not object to the allegedly improper testimony below and she has not shown that the alleged error is a manifest error affecting a constitutional right that may be raised for the first time on appeal.

A party generally waives the right to appeal an error absent an objection at trial. RAP 2.5(a); *State v. Kalebaugh*, No. 89971-1, 2015 WL 4136540, at *2 (Wash. July 9, 2015). But a

party may raise an alleged error for the first time on appeal if it constitutes a manifest error affecting a constitutional right. RAP 2.5(a)(3). This exception strikes a balance between remedying errors that result in serious injustice to an accused and maintaining the value of objections and preserving the opportunity for judges to correct errors as they happen. *Kalebaugh*, 2015 WL 4136540, at *2.

At issue is Deputy Nelson's response to the prosecutor asking him why he instructed the school secretary to contact Strong and to advise her that she could pick up her son during the lockdown if she described the vehicle she would be driving and identified any people who would be accompanying her to the school. Deputy Nelson answered, "So I would know what she was driving, who might be with her as I contacted her. *At this point in time I believed she committed this crime.*" RP at 57 (emphasis added). Strong did not object to this testimony but now argues that the last sentence is impermissible opinion testimony.

We assume without deciding that Strong satisfies the first part of the RAP 2.5(a)(3) test because impermissible opinion testimony regarding a defendant's guilt violates the defendant's constitutional right to a jury trial, which includes independent determination of the facts by the jury. *State v. Kirkman*, 159 Wn.2d 918, 927, 155 P.3d 125 (2007).

Strong does not satisfy the second part of the test because she does not show that the alleged error was manifest. Manifestness requires a showing of actual prejudice. *Kalebaugh*, 2015 WL 4136540, at *3; *Kirkman*, 159 Wn.2d at 935. "'To demonstrate actual prejudice, there must be a 'plausible showing by the [appellant] that the asserted error had practical and identifiable consequences in the trial of the case.'" *Kalebaugh*, 2015 WL 4136540, at *3 (alteration in original) (internal quotation marks omitted) (*State v. O'Hara*, 167 Wn.2d 91, 99, 217 P.3d 756 (2009)). "Next, 'to determine whether an error is practical and identifiable, the appellate court must place

itself in the shoes of the trial court to ascertain whether, given what the trial court knew at that time, the court could have corrected the error.'" *Kalebaugh*, 2015 WL 4136540, at *3 (quoting *O'Hara*, 167 Wn.2d at 100).

In the context of an admission of witness opinion testimony on an ultimate fact, without objection, manifest error requires a nearly explicit statement by the witness on an ultimate issue of fact. *Kirkman*, 159 Wn.2d at 936. The context of Deputy Nelson's testimony demonstrates that he was not expressing an opinion of Strong's ultimate guilt. Rather, it constituted his explanation for his actions based on his perception of Strong's guilt at the early stage of the investigation. Deputy Nelson had just listened to the threatening message Strong left on the school's voicemail system. None of this evidence was in dispute. The true disputed evidence involved Strong's mental state and whether she knowingly threatened the school staff or even meant to leave the message. The officer's testimony did not bear on this disputed element.[7] The context of the Deputy Nelson's testimony shows that his opinion had little or no bearing on the ultimate issue of Strong's guilt.

"Important to the determination of whether opinion testimony prejudices the defendant is whether the jury was properly instructed." *State v. Montgomery*, 163 Wn.2d 577, 595, 183 P.3d 267 (2008). In *Kirkman*, 159 Wn.2d at 937, and *Montgomery*, 163 Wn.2d at 595-96, our Supreme Court concluded that despite improper opinion testimony on the credibility of witnesses and on the disputed element of the defendant's intent, there was no prejudice because the trial court

---

[7] In making this analysis, we are aware that the State is required to prove all of the elements of the crime beyond a reasonable doubt. We are not relieving the State of this burden. We are merely pointing out the crux of Strong's argument at trial and the issue litigated in earnest by the parties.

properly instructed the jury that it was the sole judge of witnesses' credibility and was not bound by expert witness opinions.

Here, similar to *Kirkman* and *Montgomery*, the trial court instructed the jurors as follows:

> You are the sole judges of the credibility of each witness. You are also the sole judges of the value or weight to be given to the testimony of each witness. In considering a witness's testimony, you may consider . . . the opportunity of the witness to observe or know the things he or she testifies about.

Clerk's Papers at 51. There is no evidence that Deputy Nelson's opinion testimony unfairly influenced the jury, and absent evidence to the contrary, we presume that the jury followed the court's instructions. *Montgomery*, 163 Wn.2d at 596.

Because Strong has not shown that the alleged error was manifest, she may not raise it for the first time on appeal.

B.      Ineffective Assistance of Counsel—Failure to Object

Strong argues that she did not receive effective assistance of counsel because her lawyer failed to object to Deputy Nelson's opinion about Strong's guilt. We disagree.

As noted previously, a defendant claiming ineffective assistance of counsel has the burden to establish deficiency and prejudice. *Strickland*, 466 U.S. at 700; *Grier*, 171 Wn.2d at 32-33. Deficient representation prejudices a defendant if there is a "reasonable probability that, but for counsel's deficient [representation], the outcome of the proceedings would have been different." *Kyllo*, 166 Wn.2d at 862. "Only in egregious circumstances, on testimony central to the State's case, will the failure to object constitute incompetence of counsel justifying reversal." *State v. Neidigh*, 78 Wn. App. 71, 77, 895 P.2d 423 (1995). Because Strong bases her ineffective assistance of counsel claim on her lawyer's failure to object, she must show that the objection would have likely succeeded. *State v. Gerdts*, 136 Wn. App. 720, 727, 150 P.3d 627 (2007).

11

"'Generally, no witness may offer testimony in the form of an opinion regarding the guilt or veracity of the defendant; such testimony is unfairly prejudicial to the defendant because it invad[es] the exclusive province of the [jury].'" *State v. King*, 167 Wn.2d 324, 331, 219 P.3d 642 (2009) (alterations in original) (quoting *State v. Demery*, 144 Wn.2d 753, 759, 30 P.3d 1278 (2001) (internal quotations omitted)). "A law enforcement officer's opinion testimony may be especially prejudicial because the 'officer's testimony often carries a special aura of reliability.'" *King*, 167 Wn.2d at 331 (quoting *Kirkman*, 159 Wn.2d at 928). "To determine whether statements are impermissible opinion testimony, a court will consider the circumstances of a case, including, '(1) the type of witness involved, (2) the specific nature of the testimony, (3) the nature of the charges, (4) the type of defense, and (5) the other evidence before the trier of fact.'" *King*, 167 Wn.2d at 332-33 (quoting *Kirkman*, 159 Wn.2d at 928) (internal quotations omitted).

Here, as discussed above, the context of Deputy Nelson's testimony demonstrates that he did not express an opinion of Strong's ultimate guilt. Rather he explained his actions based on his perception of Strong's guilt at the early stage of the investigation, after he heard the message Strong left on the school's voicemail system but before he heard her explanations for the recording. Deputy Nelson's testimony could easily be understood to apply only to that particular moment.

The case hinged on Strong's mental state at the time she left the message. During trial, Strong admitted to leaving the message. It is important to keep in mind that Strong testified she did not intend to leave the message and that she did not mean any harm to the school staff or anybody else. The officer's testimony did not bear on the disputed element of Strong's mental state. The context of the Deputy Nelson's testimony shows that his opinion had little or no bearing on the ultimate issue of Strong's guilt. Because Deputy Nelson did not purport to weigh the evidence or evaluate Strong's credibility on any truly disputed issue, his testimony did not invade

the province of the jury; and therefore, it was not improper opinion testimony. Strong has not demonstrated that an objection would have succeeded. Accordingly, her claim for ineffective assistance of counsel fails.

III.    CUMULATIVE ERROR

Finally, Strong argues that we should reverse her convictions under the cumulative error doctrine. Application of the cumulative error doctrine "is limited to instances when there have been several trial errors that standing alone may not be sufficient to justify reversal but when combined may deny a defendant a fair trial." *State v. Greiff*, 141 Wn.2d 910, 929, 10 P.3d 390 (2000). Because no errors occurred, Strong's cumulative error claim is without merit.

We affirm.

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

_____
Melnick, J.

We concur:

_____
Johanson, C.J.

_____
Bjorgen, J.

13