[No. 8321-7-III.   Division Three.   May 26, 1988.]

THE STATE OF WASHINGTON, *Respondent,* v. DANA COLIN DAY, *Appellant.*

*Paul Wasson,* for appellant.

*Donald C. Brockett, Prosecuting Attorney,* and *Frederick Caruso, Deputy,* for respondent.

THOMPSON, J.—Dana Colin Day appeals his conviction for the first degree murder of his wife, Ramona Day. We affirm.

Ramona Day's body was found on November 2, 1980, on a hillside near the Spokane River. The 22–year–old victim apparently had been strangled with the sash of her blouse.

The victim's marriage to Mr. Day was less than perfect. In the months before his wife's death, Mr. Day had gone out with other women, including Barbara Ruskey, and had told these women he wanted out of the marriage. Ramona Day had told co–workers she was afraid of her husband. In the days before her death, she talked of leaving Mr. Day, taking their baby and moving to Oregon.

The couple's 17–month–old child, Beth Ann, was very important to both Dana and Ramona Day. One co–worker testified the baby was Ramona's "entire life". Others agreed Beth Ann meant everything to Ramona Day. Mr. Day appears to have been equally devoted. Witnesses testified he was a "very loving" father. He told co–workers he would do anything, including kill, to prevent his wife from taking the child from him. Two witnesses testified Mr. Day actually made plans to kill his wife. Kraag Carter said Mr. Day discussed at least four scenarios. John Bumpas said Mr. Day discussed similar plans.

On October 31, 1980, the Days went to a restaurant and a nearby coin laundry, where they were seen as late as 5:30 p.m. A neighbor heard Mr. Day's truck leave their home at about 6 p.m. and return about 10 p.m. Mr. Day went to dinner that evening with Barbara Ruskey, who testified she was with him from 7 p.m. until he took her home at approximately 10 p.m. Mr. Day testified when he returned home, he and his wife had a discussion about his extramarital activities. He said his wife then went for a walk, leaving

the baby behind, and never returned. The doctor who performed the autopsy testified Mrs. Day died within 2 hours of eating.

Mr. Bumpas said earlier that day, he and Dana Day had rented a motel room, where Mr. Bumpas was to gather sperm in a jar. Mr. Bumpas testified Mr. Day told him he planned to impregnate Ramona Day and use her out-of-wedlock pregnancy against her in divorce proceedings. Mr. Bumpas testified he checked into the motel room with a prostitute at 6 or 6:30 p.m., and Mr. Day came to the room at about 8 p.m. to pick up the jar. According to Mr. Bumpas, Mr. Day returned at 11 p.m. or midnight and requested that he accompany him in his truck. Mr. Bumpas noticed a "bundle" on the floor of the truck, which he later discovered was a female body. Mr. Bumpas said Mr. Day admitted strangling Ramona Day, and promised to pay him $2,000 to keep quiet. Mr. Day denied visiting Mr. Bumpas that night, and denied strangling his wife.

The next morning, November 1, 1980, Mr. Day told Ramona Day's supervisor his wife had not come home. Later that day he bought flowers for Barbara Ruskey, took her to dinner, visited friends, and stayed the night at her apartment with the baby. On November 2, 1980, Mr. Day reported his wife missing. Later, the same afternoon his wife's body was found, Mr. Day took his daughter, a friend, and Barbara Ruskey on an airplane ride over Spokane. Detectives attempted to contact Mr. Day three times that evening at his home, but he was at Barbara Ruskey's apartment again that night.

The next morning, November 3, 1980, Mr. Day went to the police station to inquire about his wife. He was interviewed from 8:30 a.m. until 11:58 a.m., when he was advised of his constitutional rights, which he waived. Officers later conducted a consented search of the Days' home and truck. Mr. Day was not arrested or charged at that time.

Mr. Bumpas gave a statement to police in March 1986, leading to Mr. Day's arrest. On December 15, 1986, a jury

found Mr. Day guilty of first degree murder, and he was sentenced to 320 months.

Mr. Day and Barbara Ruskey began living together in 1981, and married in 1983. She filed for dissolution in February 1986. Trial in this case was set for October 27, 1986, but the State requested a continuance, in light of the pending dissolution, to make available the testimony of Barbara (Ruskey) Day, who as a spouse would have been barred from testifying by the spousal testimonial privilege:

> A husband shall not be examined for or against his wife, without the consent of the wife, *nor a wife for or against her husband without the consent of the husband;* nor can either during marriage or afterward, be without the consent of the other, examined as to any communication made by one to the other during marriage.

(Italics ours.) RCW 5.60.060(1).

The dissolution was set for November 17, 1986, and the decree actually was entered November 19, 1986. The court in this case granted the continuance, observing that Barbara Day's potential testimony was material, relevant and crucial, and that an injustice would occur if she were unable to testify. In its oral ruling, the court observed that Barbara Day's testimony would be unavailable on October 27, 1986, but would be available within a reasonable time, in light of the pending dissolution.

■ Mr. Day assigns error to granting the continuance, claiming violation of his right to a speedy trial.

> On motion of the State, the court or a party, the court may continue the case when required in the administration of justice and the defendant will not be substantially prejudiced in the presentation of the defense. The motion must be filed on or before the date set for trial or the last day of any continuance or extension granted pursuant to this rule. The court must state on the record or in writing the reasons for the continuance.

CrR 3.3(h)(2). The grant or denial of a continuance will not be disturbed on appeal absent a showing of manifest abuse of discretion. *State v. Campbell,* 103 Wn.2d 1, 14, 691 P.2d

929 (1984), *cert. denied,* 471 U.S. 1094, 85 L. Ed. 2d 526, 105 S. Ct. 2169 (1985). Unavailability of a material State witness is a valid ground for continuing a criminal trial, where there is a valid reason for the unavailability, *State v. Henderson,* 26 Wn. App. 187, 191–92, 611 P.2d 1365, *review denied,* 94 Wn.2d 1008 (1980), where there is reasonable reason to believe the witness will become available within a reasonable time, *State v. Lee,* 13 Wn. App. 900, 904, 538 P.2d 538, *review denied,* 85 Wn.2d 1019 (1975), and where there is no substantial prejudice to the defendant. CrR 3.3(h)(2); *Henderson,* at 192.

Here, there is no question that Barbara Day could not have testified before the divorce. Except in limited circumstances not relevant here, RCW 5.60.060(1) bars testimony by the wife of a defendant without the husband's consent. *See State v. White,* 50 Wn. App. 858, 751 P.2d 1202 (1988); 5 K. Tegland, Wash. Prac., *Evidence* § 210, at 427–32 (2d ed. 1982). Barbara Day's testimony thus would have been unavailable on October 27, 1986. *See* ER 804(a)(1) (defining unavailable witness in hearsay context as one who is "exempted . . . on the ground of privilege from testifying . . .").

However, the testimonial privilege applies only during the marriage. *State v. Americk,* 42 Wn.2d 504, 256 P.2d 278 (1953); *State v. Lammert,* 14 Wn. App. 137, 540 P.2d 466 (1975). Mr. Day's privilege to bar his wife's testimony ended when the dissolution decree was entered, and she became an available witness. The court, recognizing that the dissolution was pending, did not abuse its discretion in continuing the trial for a reasonable time.

■ Mr. Day argues the continuance substantially prejudiced him by permitting the State to present Barbara Day's adverse testimony. "In almost any instance, a defendant can complain that the admission of potentially incriminating evidence is prejudicial in that it may contribute to proving beyond a reasonable doubt he committed the crime with which he is charged." *State v. Bernson,* 40 Wn. App. 729, 736, 700 P.2d 758, *review denied,* 104 Wn.2d 1016

(1985). At issue in *Bernson* was the application of ER 403, which limits the exclusion of prejudicial evidence to those instances where it would be "unfair". A similar limiting construction of CrR 3.3(h)(2) is appropriate. Courts should be allowed the discretion to grant a continuance to make available a material State witness where the defendant's case is not *unfairly or unjustly* prejudiced. In this case, as the court recognized, it would be unjust to bar Barbara Day's testimony, when she would become available in a reasonable time.

The continuance in this case violated neither Mr. Day's speedy trial rights nor his right to bar a spouse's testimony. Neither does it do violence to the purpose of the testimonial privilege, which is to "foster domestic harmony and prevent discord". *State v. Bonaparte,* 34 Wn. App. 285, 288, 660 P.2d 334, *review denied,* 100 Wn.2d 1002 (1983). The testimonial privilege has been severely criticized.

> When one spouse is willing to testify against the other in a criminal proceeding—whatever the motivation—their relationship is almost certainly in disrepair; there is probably little in the way of marital harmony for the privilege to preserve. In these circumstances, a rule of evidence that permits an accused to prevent adverse spousal testimony seems far more likely to frustrate justice than to foster family peace.

*Trammel v. United States,* 445 U.S. 40, 52, 63 L. Ed. 2d 186, 100 S. Ct. 906 (1980). Washington courts have narrowly interpreted the privilege, *Bonaparte,* at 289, and the *Legislature* has acted to avoid its abuse by denying its application when the marriage occurs "subsequent to the filing of formal charges against the defendant". Laws of 1982, ch. 56, § 1. Here, the marital relationship between Dana and Barbara Day was but a shell, and the continuance hardly can be said to have frustrated the purpose of the testimonial privilege. The court did not abuse its discretion.

Mr. Day next raises the issue of prosecutorial misconduct. In his closing argument, the prosecutor made the

following statement about Mr. Day's testimony: "It's preposterous. His statements aren't just one lie, a little slip–up, his statements are a pack of lies". The prosecutor repeatedly referred to Mr. Day's statements as "lies". Later, referring to Mr. Bumpas, the prosecutor said:

Mr. Bumpas is credible. The defense attorney couldn't shake Mr. Bumpas. . . . Mr. Bumpas was a young man at the time and wouldn't he be frightened? He is just coming from the south, recently here, a young kid. Would he be frightened and go back home after the threats and he grows older, would he mature? Would he be as frightened? When he sees Barbara Ruskey Day about a year before he is contacted by the police and she asks him, "Do you know anything about the murder of Dana's wife," he says, "Yes." She told him some of the things that had been going and he didn't want it to happen to her and so, comes forward. He's believable.

Mr. Day argues the prosecutor improperly vouched for his witness and expressed a personal opinion about the credibility and guilt or innocence of Mr. Day. Such statements of personal belief are forbidden. *State v. Reed,* 102 Wn.2d 140, 145, 684 P.2d 699 (1984); *State v. Sargent,* 40 Wn. App. 340, 343–44, 698 P.2d 598 (1985); RPC 3.4(f). However, not all statements by a prosecutor relating to a witness' credibility are barred.

It is not uncommon for statements to be made in final arguments which, standing alone, sound like an expression of personal opinion. However, when judged in the light of the total argument, the issues in the case, the evidence discussed during the argument, and the court's instructions, it is usually apparent that counsel is trying to convince the jury of certain ultimate facts and conclusions to be drawn from the evidence. Prejudicial error does not occur until such time as it is clear and unmistakable that counsel is not arguing an inference from the evidence, but is expressing a personal opinion.

*State v. Papadopoulos,* 34 Wn. App. 397, 400, 662 P.2d 59, *review denied,* 100 Wn.2d 1003 (1983); *see State v. Robinson,* 44 Wn. App. 611, 722 P.2d 1379, *review denied,* 107 Wn.2d 1009 (1986). In context, the prosecutor's comments

here were simply inferences he wished the jury to accept. They were not prohibited expressions of personal opinion.

Mr. Day also argues he was denied a fair trial by presentation of testimony regarding his reaction when told of his wife's death. Relying on *Sargent,* at 351, Mr. Day argues police officers were improperly asked to give their opinions despite their lack of personal knowledge of Mr. Day. In *Sargent,* a witness was asked to give his impression of the defendant's reaction after being told his wife was dead. The court held that this opinion evidence was improper, because the witness had no prior knowledge of the defendant. *Sargent,* at 351. And in *State v. Haga,* 8 Wn. App. 481, 489–92, 507 P.2d 159, *review denied,* 82 Wn.2d 1006 (1973), the court reversed a conviction because an ambulance driver was allowed to testify that the defendant had not shown the normal amount of grief over his wife's death, although the driver's opinion was based on 27 years of experience at death scenes.

■ These cases should not be interpreted as barring all testimony regarding a defendant's reaction to emotional news. Testimony regarding a defendant's statements and demeanor is not opinion and thus is admissible if relevant. In this case, much of the testimony to which Mr. Day objects related to his statements and lack of emotion during the interview with detectives. This nonopinion evidence was admissible.

Also, opinion testimony regarding a defendant's reaction is admissible if it is prefaced with a proper foundation: personal observations of the defendant's conduct, factually recounted by the witness, that directly and logically support the conclusion. *State v. Allen,* 50 Wn. App. 412, 749 P.2d 702 (1988). In this case, the officers' opinions that Mr. Day's reaction was "inappropriate" were logically based on their factual observations that he had shown "very little emotion", that he had been "unemotional", and that he did not ask questions the officers expected. The officers' testimony was not improper.

■ Mr. Day next raises the issue of ineffective assistance, alleging defense counsel was incompetent in several areas. We do not agree. The test for ineffective assistance of counsel is (1) whether defense counsel's performance fell below an objective standard of reasonableness based on consideration of all the circumstances, and (2) whether this deficiency prejudiced the defendant. *Strickland v. Washington,* 466 U.S. 668, 80 L. Ed. 2d 674, 104 S. Ct. 2052 (1984); *State v. Thomas,* 109 Wn.2d 222, 743 P.2d 816 (1987). As to the first prong, scrutiny of counsel's performance is highly deferential, and there is a strong presumption of reasonableness. *Strickland,* 466 U.S. at 689; *Thomas,* at 226. If counsel's conduct can be characterized as legitimate trial strategy or tactics, it cannot serve as a basis for a claim of ineffective assistance. *State v. Mak,* 105 Wn.2d 692, 731, 718 P.2d 407, *cert. denied,* 479 U.S. 995, 93 L. Ed. 2d 599, 107 S. Ct. 599 (1986). As to the second prong, the defendant has the burden to show that

> there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome.

*Strickland,* 466 U.S. at 694; *see Thomas,* at 226. Evaluation of counsel's performance requires examination of the whole record. *State v. Ciskie,* 110 Wn.2d 263, 284, 751 P.2d 1165 (1988).

Mr. Day contends counsel's failure to present testimony during CrR 3.5 hearings was unreasonable. He argues his own testimony later in the trial demonstrated statements he made during the November 3, 1980 interview with police were involuntary and a result of custodial interrogation, and defense counsel was confused about the procedures of a CrR 3.5 hearing. The record does not substantiate these claims. Defense counsel obviously understood the hearing process. He cross–examined the State's witnesses, conducted voir dire, and successfully argued for suppression of some statements. Counsel's performance was reasonable under the circumstances.

■ Mr. Day contends counsel should have moved for dismissal because of the 5½–year delay between the homicide and the filing of charges. This argument appears to be based both on the speedy trial clause and the due process clause of the United States Constitution. However, the protections of the speedy trial clause apply only when a formal indictment or information is outstanding, or when there are actual restraints imposed on the defendant. *United States v. Loud Hawk,* 474 U.S. 302, 88 L. Ed. 2d 640, 106 S. Ct. 648, 654, *reh'g denied,* 106 S. Ct. 1289 (1986); *United States v. Marion,* 404 U.S. 307, 320, 30 L. Ed. 2d 468, 92 S. Ct. 455 (1971); *State v. Boseck,* 45 Wn. App. 62, 65, 723 P.2d 1182 (1986). Mr. Day was not charged during the delay, nor was he under any restraint, so the speedy trial clause does not apply. Under a due process inquiry, the court must consider the reasons for the delay as well as prejudice to the defendant. *United States v. Lovasco,* 431 U.S. 783, 52 L. Ed. 2d 752, 97 S. Ct. 2044, *reh'g denied,* 434 U.S. 881 (1977); *State v. Calderon,* 102 Wn.2d 348, 352, 684 P.2d 1293 (1984). A prosecutor has broad discretion in deciding when to bring charges. *Lovasco,* 431 U.S. at 795–96; *Calderon,* at 353. Here, Mr. Day has failed to demonstrate prejudice resulting from the delay, and the State apparently was unable to bring charges until Mr. Bumpas came forward in 1986. Mr. Day thus had no legitimate complaint regarding the preaccusational delay, and his attorney's failure to make such a claim was not unreasonable.

Mr. Day next contends his attorney failed to object to prejudicial hearsay testimony and presented damaging evidence of his own throughout the trial. An examination of the record reveals, however, that much of the testimony related statements of the defendant, which are not hearsay. ER 801(d)(2)(i). Other testimony related statements by Ramona Day expressing fear of Mr. Day, ER 803(a)(3);

*State v. Parr,* 93 Wn.2d 95, 104, 606 P.2d 263 (1980), or tending to show her plans to leave. *State v. Bernson, supra* at 738. In remaining instances of hearsay testimony, Mr. Day has failed to demonstrate prejudice to his case, and in fact much of the evidence appears to be directly related to a legitimate defense theory. Likewise, much of the evidence presented by defense counsel to which Mr. Day objects was directed to this legitimate theory. We find no basis in the record for faulting counsel's trial strategy.

Mr. Day also directs our attention to counsel's failure to request an accomplice instruction regarding the testimony of Mr. Bumpas. A cautionary jury instruction regarding accomplice testimony, *see* WPIC 6.05, is mandatory unless there is sufficient corroborative testimony to make such an instruction unnecessary. *State v. Harris,* 102 Wn.2d 148, 155, 685 P.2d 584 (1984); *State v. Johnson,* 40 Wn. App. 371, 379, 699 P.2d 221 (1985).

We question first whether Mr. Bumpas may be considered an accomplice under these facts. RCW 9A.08.020(3); *State v. Boast,* 87 Wn.2d 447, 456, 553 P.2d 1322 (1976); *State v. Jennings,* 35 Wn. App. 216, 220, 666 P.2d 381, *review denied,* 100 Wn.2d 1024 (1983); *see* RCW 9A.76-.050(5); RCW 9A.76.070. Second, we note there was sufficient corroborative evidence to make an accomplice instruction unnecessary. Counsel's failure to request such an instruction was not unreasonable.

The trial court made the following observation regarding counsel's performance.

> I feel Mr. Walker did a superb job of defense in this case and I feel that all issues were thoroughly explored both on his direct and cross–examination and the defendant's theory of the case was adequately presented to the jury, the jury was in a position to be fully apprised of the facts on both sides of the case, and I find Mr. Walker's representation was not incompetent, but was very competent.

Nothing in the record suggests otherwise.

We have reviewed the remaining issues presented by Mr. Day and find them to be without merit. His conviction for first degree murder is affirmed.

McINTURFF, C.J., and MUNSON, J., concur.

Reconsideration denied June 20, 1988.

Review denied by Supreme Court October 4, 1988.