IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION ONE

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | No. 72497-5-I |
| | ) | |
| Respondent, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| DOUGLAS HO, | ) | UNPUBLISHED OPINION |
| | ) | |
| Appellant. | ) | FILED: June 27, 2016 |
| | ) | |

VERELLEN, C.J. — Douglas Ho appeals his convictions for three counts of first degree assault while armed with a firearm and one count of unlawful possession of a firearm. Ho contends that he was denied his constitutional right to counsel of choice and that a law enforcement officer's testimony amounted to an impermissible opinion on his guilt and a comment on his right to remain silent. Ho also raises claims relating to prosecutorial misconduct, jury unanimity, and mitigating factors considered at sentencing. We affirm.

## FACTS

On the evening of July 22, 2012, William Ngeth and two other men, Lawrence West and Troung Ngo, were driving in the Beacon Hill neighborhood of Seattle in Ngeth's car. All three men were members of a street gang called the Tiny Raskal Gangsters (TRG). While waiting at an intersection, a car driven by Victor Contreras pulled up alongside Ngeth's car. Ho was in the front passenger seat. Both Contreras

and Ho were members of a rival street gang, the Insane Boyz. Ho emerged from the sunroof of Contreras's car holding a gun and fired a shot at Ngeth's car. A high speed chase ensued. About 20 blocks away, Ngeth's car crashed onto a curb and Ngeth, West, and Ngo fled the car. Contreras and Ho pursued the men on foot and shot at them, striking West in the arm and torso.

The State charged Ho with three counts of first degree assault and two counts of first degree unlawful possession of a firearm. A jury convicted Ho as charged and the trial court imposed a standard range sentence. Ho appeals.

## ANALYSIS

### Right to Counsel of Choice

Ho contends that the trial court violated his constitutional right to counsel of his choice when it denied his request for a continuance of the trial date in order to substitute court-appointed counsel with retained counsel. We disagree.

Attorney Erick Spencer was appointed to represent Ho at the time of Ho's arraignment on August 9, 2012. Spencer later withdrew due to a conflict involving one of the State's witnesses, and Brian Todd was appointed to represent Ho on June 12, 2013. The trial date was set for April 10, 2014.

On April 8, 2014, two days before trial was scheduled to begin, Ho moved for a continuance of 90 days in order to retain attorney John Crowley. Crowley stated that he had met with Ho more than a year previously to discuss representation "but there were just some problems that the family was not able to go forward at that time."[1] Crowley emphasized that Ho was not dissatisfied with appointed counsel, nor was there a

_____

[1] Report of Proceedings (RP) (Apr. 8, 2014) at 76.

2

breakdown in communications, but "[h]e just wanted the counsel of his choice at this time."[2] Contreras, Ho's codefendant, objected to any continuance. The deputy prosecutor informed the trial court she was also handling another trial that was expected to begin the following day, April 9, and would last five weeks. The trial court provisionally denied Ho's request, stating:

> COURT: Well, I think that—I think I'm going to have to deny this without prejudice. Mr. Crowley, I may let you in, actually. But it depends on what happens with [the deputy prosecutor's April 9 case]. But that case would have a huge—it would have a huge ripple effect on all the other cases in the system. So at this point I'm going to keep you on for trial in two days.
>
> CROWLEY: Very well.
>
> COURT: All right. Mr. Todd, you're still on the case.
>
> TODD: Thank you.
>
> COURT: Thank you. And I assume Mr. Todd would notify you if things change with [the deputy prosecutor] going out to trial in [the April 9 case].
>
> CROWLEY: That's great.[3]

The record contains no further mention of the prosecutor's other trial, and Ho's trial began on April 10 as scheduled. There is no indication that Ho renewed his motion for a continuance or substitution of counsel.

Where a defendant retains counsel, the Sixth Amendment encompasses the right to counsel of his or her choice.[4] But the right to retain counsel of choice is not

---

[2] Id.

[3] Id. at 78.

[4] United States v. Gonzalez-Lopez, 548 U.S. 140, 148, 126 S. Ct. 2557, 165 L. Ed. 2d 409 (2006).

unlimited, and a trial court must balance this right with the need to efficiently administer justice.[5] These situations are highly fact dependent and "'[t]here are no mechanical tests'" that can be used.[6] Instead, a trial court must consider all relevant information, including

(1)     whether the request came at a point sufficiently in advance of trial to permit the trial court to readily adjust its calendar;

(2)     the length of the continuance requested;

(3)     whether the continuance would carry the trial date beyond the period specified in the state speedy trial act;

(4)     whether the court had granted previous continuances at the defendant's request;

(5)     whether the continuance would seriously inconvenience the witnesses;

(6)     whether the continuance request was made promptly after the defendant first became aware of the grounds advanced for discharging his or her counsel;

(7)     whether the defendant's own negligence placed him or her in a situation where he or she needed a continuance to obtain new counsel;

(8)     whether the defendant had some legitimate cause for dissatisfaction with counsel, even though it fell short of likely incompetent representation;

(9)     whether there was a "rational basis" for believing that the defendant was seeking to change counsel "primarily for the purpose of delay";

(10)    whether the current counsel was prepared to go to trial;

---

[5] State v. Hampton, 184 Wn.2d 656, 662-63, 361 P.3d 734 (2015), cert. denied, No. 15-8300, 2016 WL 777205 (U.S. Apr. 25, 2016).

[6] Id. at 669 (quoting Ungar v. Sarafite, 376 U.S. 575, 589, 84 S. Ct. 841, 11 L. Ed. 2d 921 (1964)).

(11)    whether denial of the motion was likely to result in identifiable prejudice to the defendant's case of a material or substantial nature.[7]

This court reviews the denial of a continuance in order to allow a defendant to retain counsel for abuse of discretion.[8] A trial court abuses its discretion when its decision "'is manifestly unreasonable, or is exercised on untenable grounds, or for untenable reasons.'"[9]

Here, Ho did not move to substitute retained counsel until two days before trial. Thus, he failed to move "at a point sufficiently in advance of trial to permit the trial court to readily adjust its calendar."[10] Additionally, Ho candidly admitted he had no "legitimate cause for dissatisfaction with [appointed] counsel."[11] And the record shows that the trial court had granted at least 16 previous continuances at Ho's request. Finally, the trial court denied Ho's motion without prejudice, contingent upon the deputy prosecutor's schedule, and invited Ho to renew his motion, which Ho did not do. We conclude the trial court's order was an appropriate exercise of its discretion.[12]

*Youth as Mitigating Factor in Sentencing*

After Ho was sentenced, the Washington Supreme Court issued its opinion in State v. O'Dell, holding that a defendant's youth can justify an exceptional sentence

---

[7] Id. (quoting 3 WAYNE R. LAFAVE, ET AL, CRIMINAL PROCEDURE § 11.4(c) at 718-20 (3d ed. 2007)).

[8] Id. at 670.

[9] Id. (quoting State v. Blackwell, 120 Wn.2d 822, 830, 845 P.2d 1017 (1993)).

[10] Id. at 669.

[11] Id.

[12] Though Ho argues that the trial court's denial of his right to counsel of choice constituted structural error requiring reversal, Gonzalez-Lopez is clear that only the *erroneous* deprivation of this right is structural error. 548 U.S. at 150.

below the standard range.[13] Ho, who was 18 when he committed the crimes, contends that he is entitled to resentencing in light of O'Dell. But O'Dell does not provide a basis for the relief Ho seeks.

As a general rule, a defendant may not appeal the imposition of a standard range sentence unless the court refuses to exercise its discretion at all or denies an exceptional sentence for impermissible reasons.[14] In O'Dell, the defendant asked the court to impose an exceptional sentence downward because his capacity to appreciate the wrongfulness of his conduct was impaired by his youth.[15] Witnesses testified that the defendant acted much younger than his chronological age and that his bedroom contained childish memorabilia such as toys and stuffed animals.[16] The trial court denied the request based on its belief that it could not consider the defendant's age as a possible mitigating factor.[17] Because this belief was erroneous, resentencing was warranted.[18]

Here, in contrast, Ho did not request an exceptional sentence downward based on his youth, nor did the trial court state that it could not impose one. Thus, Ho has not demonstrated that the trial court refused to exercise its discretion or misconstrued its authority.

---

[13] 183 Wn.2d 680, 358 P.3d 359 (2015).

[14] State v. Grayson, 154 Wn.2d 333, 341-42, 111 P.3d 1183 (2005).

[15] O'Dell, 183 Wn.2d 685.

[16] Id. at 697-98.

[17] Id. at 685-86.

[18] Id. at 696-97.

*Comment on Right to Silence*

Ho contends that the testimony of one of the State's witnesses amounted to an impermissible opinion on guilt and a comment on his right to remain silent.[19] We decline to review these claims because Ho fails to establish a manifest error affecting a constitutional right.[20]

At trial, Detective Robert Sevaaetasi testified regarding Ho's attitude and demeanor following his arrest:

> Q.   When asked about their whereabouts on the night in question, was there an answer?
>
> A.   They couldn't account for where they were.
>
> Q.   Did both of them give the same kind of answers?
>
> A.   Yes. They . . . were kind of indifferent to the whole incident, being interviewed, being advised of their rights. It was like nonchalant to them, and I found this not at all unusual.
>
> Q.   The nonchalance you didn't find unusual?
>
> A.   Yeah, or the indifference to it and that there was similar behavior.
>
> Q.   Explain nonchalance and indifference.
>
> A.   Well, you know, normally you would arrest someone, put them in handcuffs, and take them to the police station. They would—some protestation about guilt or innocence or whatever or why they're there. There was no such attitude from them. They were – really kind of indifferent, just sat there. And when I asked them if they could account for their—their whereabouts, it was, "I don't remember. I don't know."[21]

---

[19] We note that this same argument, as well as the subsequent two arguments regarding jury unanimity and prosecutorial misconduct, were raised and rejected in Contreras's direct appeal.

[20] RAP 2.5(a).

[21] RP (May 6, 2014) at 97-98.

Because Ho did not object to this testimony below, we must first determine whether it can be challenged for the first time on appeal. In general, failure to raise an issue at trial waives the issue on appeal unless it is a manifest error affecting a constitutional right.[22] An error is manifest only if it had practical and identifiable consequences in the case.[23]

Ho argues that the testimony was an improper expression of Detective Sevaaetasi's personal opinion that Ho was guilty. A witness may not offer opinion testimony regarding the defendant's guilt; whether a defendant is guilty is a question "solely for the jury and [is] not the proper subject of either lay or expert opinion."[24] However, testimony describing a defendant's demeanor is not opinion and is admissible if relevant.[25]

Detective Sevaaetasi's testimony was not an opinion on Ho's guilt. His testimony that Ho acted "nonchalant" and "indifferent" to being interviewed did not convey an opinion but merely his observation of Ho's behavior. Furthermore, Detective Sevaaetasi did not imply that, in his experience, guilty people acted calm and relaxed in police custody. In fact, he stated that Ho's demeanor was "not at all unusual."[26] Consequently, the testimony does not warrant review for the first time on appeal.

---

[22] State v. Kirkman, 159 Wn.2d 918, 926, 155 P.3d 125 (2007).

[23] State v. Schaler, 169 Wn.2d 274, 282-83, 236 P.3d 858 (2010).

[24] State v. Garrison, 71 Wn.2d 312, 315, 427 P.2d 1012 (1967).

[25] State v. Day, 51 Wn. App. 544, 552, 754 P.2d 1021 (1988).

[26] RP (May 6, 2014) at 98.

Ho also contends that the testimony was a comment on his Fifth Amendment right to remain silent. "A police witness may not comment on the silence of the defendant so as to infer guilt from a refusal to answer questions."[27]

Here, however, Ho did not invoke his right to silence. Instead, Ho was responsive to questions, stating he did not remember where he had been the night of the shootings. And Detective Sevaaetasi's testimony that people who are arrested typically make "some protestation about guilt or innocence or whatever or why they're there" was not a comment on Ho's silence.[28] Instead, Detective Sevaaetasi explained how Ho appeared "nonchalant" and "indifferent" by contrasting his behavior with that of other people he had arrested.

Because Detective Sevaaetasi's testimony was not an opinion on guilt or a reference to Ho's right to remain silent, Ho fails to establish manifest error.[29]

*Unanimity*

Ho contends that his right to a unanimous jury verdict on the assault charges was violated. Because the evidence showed that shots were fired in two separate locations, Ho argues the State had to elect one location for the jury to consider or the court had to give the jury a unanimity instruction.

When the State presents evidence that the defendant committed two or more acts, any one of which could constitute the crime charged, the State either must elect

---

[27] State v. Lewis, 130 Wn.2d 700, 705, 927 P.2d 235 (1996).

[28] RP (May 6, 2014) at 97-98.

[29] In his assignments of error Ho also contends that defense counsel was ineffective for failing to object to the testimony, but does not provide any argument in support of this claim. Appellants waive assignments of error that they fail to argue in their opening appellate briefs. Cowiche Canyon Conservancy v. Bosley, 118 Wn.2d 801, 809, 828 P.2d 549 (1992).

one act or the jury must be instructed that it must unanimously agree on a single act.[30] No election or unanimity instruction is required, however, if the defendant's acts were part of a "continuing course of conduct."[31] We review the facts in a commonsense manner to determine whether criminal acts are a continuing course of conduct.[32] Generally, where the defendant engages in a series of actions intended to achieve a singular objective, the evidence establishes a continuing course of conduct.[33]

Here, neither an election nor an instruction was required because the shootings were a continuing course of conduct. The shootings in this case were relatively close together in time and location and involved the same victims. They occurred during a single, continuous pursuit involving the same vehicles. Finally, the objective of both shootings was the same: to kill a TRG member as part of a gang rivalry. Viewed in a commonsense manner, the shootings were a continuing course of conduct.

*Prosecutorial Misconduct*

Ho argues the prosecutor committed two instances of misconduct during closing argument. To prevail on a claim of prosecutorial misconduct, a defendant must establish that the conduct was both improper and prejudicial.[34] If the defendant objected at trial, he or she must show that the prosecutor's misconduct resulted in prejudice that had a substantial likelihood of affecting the jury's verdict.[35] However,

---

[30] State v. Petrich, 101 Wn.2d 566, 572, 683 P.2d 173 (1984), overruled on other grounds by State v. Kitchen, 110 Wn.2d 403, 756 P.2d 105 (1988).

[31] Id. at 571.

[32] Id.

[33] State v. Fiallo-Lopez, 78 Wn. App. 717, 724, 899 P.2d 1294 (1995).

[34] State v. Fisher, 165 Wn.2d 727, 747, 202 P.3d 937 (2009).

[35] State v. Emery, 174 Wn.2d 741, 760, 278 P.3d 653 (2012).

where defense counsel fails to object, any error is waived unless "the prosecutor's misconduct was so flagrant and ill-intentioned that an instruction could not have cured the resulting prejudice."[36]

Ho contends the prosecutor improperly vouched for West's credibility by saying, "[W]e only know for certain two of the individuals that were shooting that night. That was Mr. Contreras and Mr. Ho."[37] He argues that this statement conveyed the prosecutor's personal opinion that West's testimony identifying Ho and Contreras as the shooters was credible.

A prosecutor commits misconduct by vouching for a witness's credibility.[38] However, a prosecutor's use of the word "we" amounts to vouching only if it places the prestige of the government behind the witness or suggests that information not presented to the jury supports the witness's testimony.[39] Here, the prosecutor's remark did not express a personal opinion about West's credibility. Rather, the prosecutor used the phrase "we know" to marshal evidence actually admitted at trial. Furthermore, Ho did not object to this statement and fails to show that any impropriety was flagrant, ill-intentioned, or incurable.

Ho also contends the prosecutor disparaged defense counsel by telling the jury that defense counsel had "gone through in their closing and tried to explain away or dismiss every single piece of the State's evidence. But it gets to a point where you

---

[36] Id. at 760-61.

[37] RP (May 13, 2014) at 15-16.

[38] State v. Robinson, 189 Wn. App. 877, 892, 359 P.3d 874 (2015).

[39] Id. at 894.

lose—where it becomes nonsensical."[40] The trial court overruled Ho's objection to this remark.

It is improper for the prosecutor to disparagingly comment on defense counsel's role or impugn defense counsel's integrity.[41] It is not improper, however, to argue that the evidence does not support the defense theory or to comment critically on a defense argument.[42] The remark challenged here focused on the validity of defense counsel's arguments and did not directly or indirectly impugn defense counsel's role or integrity. Ho has not shown, and the record does not demonstrate, a substantial likelihood that the remark affected the jury's verdict.

*Statement of Additional Grounds*

Ho raises several arguments in a pro se statement of additional grounds. None have merit.

Ho contends that the trial court failed to make an individualized inquiry into his ability to pay legal financial obligations, as required by State v. Blazina.[43] But Blazina addressed only discretionary legal financial obligations. A review of the judgment and sentence shows that the trial court imposed only the victim penalty assessment and DNA collection fee. These obligations are mandated by statute, and a trial court lacks discretion to consider a defendant's ability to pay when imposing them.[44]

---

[40] RP (May 13, 2014) at 87.

[41] State v. Thorgerson, 172 Wn.2d 438, 451, 258 P.3d 43 (2011).

[42] Id. at 465.

[43] 182 Wn.2d 827, 344 P.3d 680 (2015).

[44] State v. Lundy, 176 Wn. App. 96, 105, 308 P.3d 755 (2013).

Ho raises additional claims of prosecutorial misconduct during closing argument.

He contends the prosecutor misstated the burden of proof by stating:

> And again, finally, who had which firearm? We have a pretty good idea. Are you convinced beyond a reasonable doubt who was holding which gun? You don't need to be to find the defendants guilty of the charged crimes in this case.[45]

But the prosecutor did not tell the jury they did not need to find all of the elements of the crime beyond a reasonable doubt. Rather, the prosecutor explained to the jury that, because Ho had been charged as both a principal and an accomplice, it was not necessary for the jury to determine whether Ho's bullet or Contreras's bullet struck West. Ho also contends that the prosecutor "testif[ied] as a witness" by arguing that Ho's intent was to hurt or kill the three men.[46] But a prosecutor has wide latitude in closing argument to draw reasonable inferences from the evidence.[47] Such a statement was supported by the evidence.[48]

Ho challenges the sufficiency of the evidence supporting the unlawful possession of a firearm conviction. But West testified that he saw Ho pointing a gun at him. And this testimony was consistent with the physical evidence, including the position of West's gunshot wounds and a bullet strike on Ngeth's car. Moreover, Ho's fingerprints

---

[45] RP (May 13, 2014) at 36.

[46] Statement of Additional Grounds at 4.

[47] State v. Stenson, 132 Wn.2d 668, 727, 940 P.2d 1239 (1997).

[48] Ho's other alleged instances of misconduct either repeat those made by appellate counsel or misstate the record. For example, Ho contends the prosecutor erred by stating, "It is clear . . . they are all guilty." However, the prosecutor actually stated, "It's clear, however, from all of the circumstantial evidence regarding these three individuals' intent that they did have the intent to inflict great bodily harm. If one of them did, then under accomplice liability, they all are guilty of assault in the first degree." RP (May 13, 2014) at 15. This was a proper characterization of the law.

were found on a Kimber handgun that matched shell casings found at the scene. This was sufficient evidence for the jury to find beyond a reasonable doubt that Ho possessed a firearm.[49]

In his supplemental assignments of error, Ho contends this court should not award any costs on appeal. The State responds that costs should be awarded on appeal. Both raise arguments related to this court's recent decision in State v. Sinclair.[50]

We adhere to Sinclair. Ho was found indigent both for trial and for appeal. He has been sentenced to more than 50 years in prison. The State has not provided any factual basis to overcome the continuing presumption of indigency. Consistent with Sinclair, we conclude that no costs should be awarded on appeal.

Affirmed.

WE CONCUR:

---

[49] Ho's remaining claims involve matters outside the record and therefore cannot be addressed in a direct appeal. State v. McFarland, 127 Wn.2d 322, 335, 338 n.5, 899 P.2d 1251 (1995).

[50] 192 Wn. App. 380, 367 P.3d 612 (2016) (petition for review pending).