# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION  II

| | |
|---|---|
| STATE OF WASHINGTON, | No.  58897-8-II |
| Respondent, | |
| v. | |
| JUSTIN CODY SMITH, | UNPUBLISHED OPINION |
| Appellant. | |

PRICE, J. — Justin C. Smith appeals his conviction for third degree assault, domestic violence.  He argues that the trial court erred when it admitted hearsay testimony that did not fall under an exception and that constituted an improper opinion of guilt.  We disagree and affirm.

FACTS

In the late evening, on February 2, 2021, law enforcement responded to a 911 call from Gary Smith.  Gary reported that his adult son, Justin, had just stabbed him with a knife at their home.[1]  After law enforcement arrived on the scene, Gary was given medical attention for knife wounds to his arm and leg.  Justin, meanwhile, barricaded himself inside the home and refused to come out.  Law enforcement observed that Justin was "waving and yelling" and moving around throughout the house.  Clerk's Papers (CP) at 3.  After being unsuccessful in persuading Justin to leave the house, special weapons and tactics (SWAT) team members used gas canisters to force Justin out, where he was arrested.

---

[1] Because Gary and Justin share the same last name we refer to them by their first names for clarity.

Law enforcement accompanied Gary to the hospital where a sheriff's deputy initially obtained an eight-minute audio recorded statement from him about the incident. Later, a detective, who had specialized training in working with and interviewing crime victims, also met with Gary to obtain a second, longer audio-recorded statement. The detective also helped Gary complete a written domestic violence victim statement.

Following further investigation, the State charged Justin with second degree assault, domestic violence, and unlawful possession of a controlled substance, methamphetamine. The charge for unlawful possession was eventually dropped. Approximately twenty-two months later, in December 2022, Justin proceeded to a jury trial on the single charge of second degree assault, domestic violence.

I. ADMISSION AND PUBLICATION OF AUDIO RECORDINGS

A. 911 CALL AND INITIAL STATEMENT TO SHERIFF'S DEPUTY

The State called Gary as its first witness. On direct examination, Gary appeared to remember little about the incident. Although Gary remembered that he was injured that night, he told the State that he could not recall why he and Justin had argued or fought. He only vaguely remembered speaking to law enforcement at the hospital.

After several of these types of answers from Gary, the State asked the trial court to excuse the jury. Outside the presence of the jury, and in an attempt to refresh Gary's recollection, the State played a recording of Gary's 911 call. After hearing the recording, Gary recognized his voice but said he could not attest to the recording's accuracy because, at the time that he had made the call, "[a]drenaline was probably flowing, probably excited." Verbatim Rep. of Proc. (VRP) at 161. Gary then explained that he "[did]n't agree with being here" because what had occurred

2

between Justin and him "was a family matter that got totally blown out of proportion." VRP at 162.

The State next played the eight-minute recording of a statement made by Gary to the deputy sheriff at the hospital. Similar to the 911 call, Gary recognized his own voice, but he "[did]n't ever remember talking to [the deputy]." VRP at 163. Gary explained that he "tried to dump as much of that night from [his] memory as [he] could." VRP at 163. The State then tried to clarify what Gary could remember.

> [State:] Is it safe to say that on that night, though, prior to dumping it from your memory that that was what you had recalled occurred on the day in question?
>
> [Gary:] I told you, I don't know. I don't remember even talking to that deputy.

VRP at 163. Gary then repeated that he did not agree "with any of this going on." VRP at 163.

The State finally presented Gary with a copy of a domestic violence victim statement that he had signed and initialed. While Gary recognized his signature, he claimed he did not recognize the victim statement. He also said that viewing the victim statement did not help him remember making a statement or the events of that evening. Gary appeared to suggest that his memory was poor because on the night of the incident, "[he]'d been up for almost twenty-four hours." VRP at 164.

Still outside the presence of the jury, the State asked the trial court to permit the publishing of the recorded 911 call and the eight-minute recorded statement to law enforcement as recorded recollections under ER 803(a)(5). The State argued that these recordings met the requirements of a recorded recollection because Gary said he could not recall what happened that night because of the time that had passed (and because of Gary's reluctance to participate as a witness). The State

also asked that the 911 call recording be admitted as a present sense impression under ER 803(a)(1).

Defense counsel did not object to admitting the 911 call. But counsel objected to publishing the recording of Gary's statement to the deputy; the objection, however, was not based on the failure to meet the requirements of a recorded recollection under ER 803(a)(5), it was based solely on *Crawford*.[2]

> As far as the eight-minute tape goes, that is, I would suggest under *Crawford* that Mr. Smith not recalling anything from that date severely undercuts my ability to cross-examine him or confrontation with him as far as his testimony goes. Statements—and this goes to the 911 tape. Statements are nontestimonial when made in the course of police interrogation under circumstances objectively indicating that the primary purpose of the interrogation is to enable police assistance to meet an ongoing emergency.
>
> The eight-minute tape is not that. Maybe the 911 tape is. That's for the Court to decide. But, the eight-minute tape certainly was meant for testimonial purposes. There was no longer a police emergency as far as what happened. That was resolved with the 911 call. And with Mr. Smith claiming his memory, that seriously limits my ability to cross-examine him, and so that's the basis for my objections.

VRP at 167-68.

The State responded that *Crawford* was not implicated because it "does not apply when the witness is physically present in the courtroom." VRP at 168. Even though "[Gary] may not be able to be cross-examined to the defense's liking," defense counsel *could* cross-examine Gary. The State further explained:

---

[2] In *Crawford v. Washington*, the United States Supreme Court held that a witness' out-of-court testimonial statements must be excluded under the confrontation clause unless: (1) the witness is unavailable, and (2) the defendant had a prior opportunity to cross-examine the witness. 541 U.S. 36, 53-54, 124 S. Ct. 1354, 158 L. Ed. 2d 177 (2004).

> I plan on playing these both with [Gary] still here. I'm not asking for him, obviously, to be excluded, and . . . if these are played for the jury, I intend to ask him follow-up questions after that, but then [defense counsel] would be able to cross-examine after the playing. I'm not asking for him to wait until [defense counsel] crosses, excuse him, and then ask for these to be played. I intend to—if the Court rules in my favor, for them to be played with the witness in the witness stand.

VRP at 169.

The trial court agreed with the State, ruling that the 911 call could be admitted (as exhibit 7) and that the eight-minute audio recording of Gary's statement to the deputy could be played for the jury (marked as exhibit 8, but not admitted).

The jury returned and the recordings were played. Like he did outside the presence of the jury, Gary testified that he still could not remember the incident or the circumstances leading up to it. He also testified he could not remember signing a written domestic violence victim statement that night.

B. SECOND RECORDED STATEMENT—TO DETECTIVE WOOD

In addition to the previous two recordings—the 911 call and the eight-minute recorded statement to the deputy—there was a third recording, obtained by Detective Melissa Wood who also interviewed Gary at the hospital. When the detective arrived, Gary was finishing his initial recorded statement with the deputy. Detective Wood, who had specialized training in interviewing crime victims, explained that whereas the initial eight-minute statement was intended to quickly assess the current situation, she wanted to obtain a longer statement from Gary, designed to be a "slow[ed] down," "detailed," "get everything statement." VRP at 238.

The State requested, and received permission, to publish to the jury this second, 40-minute audio recording of Gary's statement with Detective Wood as a recorded recollection. Defense

counsel did not object, stating merely that they would "leave it to the Court's discretion." VRP at 238. This recording was played for the jury and published (marked as exhibit 9, but not admitted at that point).

Eventually, exhibits 8 and 9 (the two recorded statements) were admitted. Despite the defense's initial objection to exhibit 8, the State and the defense eventually stipulated to the admission of both exhibits.[3]

## II. THE READING OF THE DOMESTIC VIOLENCE VICTIM STATEMENT

Detective Wood also testified that during her interview with Gary, she had completed a written domestic violence victim statement with him. She explained that the statement "is an affidavit signed by the victim under penalty of perjury" that includes a series of questions which allow victims to describe what happened to them in their own words. VRP at 243.

Detective Wood testified that when filling out the form, she tried to record Gary's answers "as accurately, as close as [she] c[ould] in [his] words." VRP at 244. After the interview, she said she had reviewed the form with him to ensure that the words were accurate, and that he had initialed the responses to each question.

---

[3] [State]: And Your Honor, one last thing. The parties stipulate to admit, so they can go back to the jury room, State's Exhibit 8, which was the eight-minute interview, the initial interview with Mr. Gary Smith. State's Exhibit 9, which was the forty-minute interview with Detective Wood. And Your Honor, the basis for that is we under—we had discussed that there may have been audio issues, given this room, and to be sure that the jury had full knowledge of the audio issues, and defense has stipulated to that.

COURT: [Defense Counsel], you're agreeing to admission of 8 and 9?

[Defense Counsel]: Yes, Your Honor.

COURT: So, 8 and 9 are admitted by stipulation.

VRP at 326.

The State then requested to publish Gary's domestic violence victim statement as a recorded recollection under ER 803(a)(5). Justin objected to publication on the basis of "redundancy" with other statements from Gary, including the recordings. VRP at 264. But the trial court overruled this objection and permitted the domestic violence victim statement to be read into evidence with Detective Wood reading Gary's responses on the statement.

> [State]: So, Detective Wood, I'm going to ask the questions and I'm going to ask for you to respond what Gary Smith's response was to you on the night in question. I'm going to start with Question One: Have you been assaulted?
>
> [Wood]: Yes.
>
> [State]: Question Two: How were you assaulted? Example, slapped, bitten, grabbed, pushed, kicked, strangled/choked, punched with fist, struck with object. If so, list object.
>
> [Wood]: Attacked with a knife.
>
> [State]: List object.
>
> [Wood]: Knife and toothbrush.
>
> [State]: Question Three: Who assaulted you?
>
> [Wood]: Justin C. Smith.
>
> [State]: Question Four: What is their relationship to you?
>
> [Wood]: Son.
>
> [State]: Question Five: Are or were you hurt or injured as a result of this incident?
>
> [Wood]: Yes.
>
> [State]: Question Six: Please describe your injuries.
>
> [Wood]: Lacerations from knife.
>
> [State]: Question Seven: Were you threatened?
>
> [Wood]: Yes.
>
> [State]: If yes, then describe the specific threat.
>
> [Wood]: Mouthing off.
>
> [State]: Question Eight: Were you afraid that the suspect would or will carry out the threat?
>
> [Wood]: No answer.

. . . .

[State]: Question Nineteen: Please describe the assault in your own words.

[Wood]: I came into his bedroom to tell him to get his stuff and leave.  He came at me with his knife.  I took him down and pinned his right hand, holding the knife, down to the floor with my knee.  I took a toothbrush out of his other hand.  I tried to swing at him and I missed.  He got free and hit at me with the knife and I got up and left.  I went to my room and called 911.

VRP at 245-47.

Following the presentation of evidence, the jury returned a verdict of guilty on the lesser included offense of third degree assault.  Justin appeals.

ANALYSIS

Justin argues that the superior court erred when it: (1) allowed the two audio recordings of Gary's statements to law enforcement to be played, and Gary's domestic violence victim statement to be read, to the jury as recorded recollections, and (2) allowed Gary's domestic violence victim statement to be read to the jury when it contained an improper opinion of guilt.  We disagree.

I.  STANDARD OF REVIEW

We review the trial court's decision to admit or exclude evidence for an abuse of discretion.  *State v. Gunderson*, 181 Wn.2d 916, 922, 337 P.3d 1090 (2014).  An abuse of discretion occurs when the decision was manifestly unreasonable or based on untenable grounds or reasons.  *Id.*  A trial court's decision is manifestly unreasonable and untenable if it is made based on the misconstruction of a rule or law.  *Id.*

II.  ADMISSIBILITY OF GARY'S STATEMENTS AS RECORDED RECOLLECTIONS

Justin first argues that the trial court erred by allowing the State to admit the two audio recordings of Gary's statements to the deputy and to Detective Wood (exhibits 8 and 9) and by

8

allowing the State to read Gary's domestic violence victim statement into evidence because they did not qualify under the recorded recollection exception to hearsay.

RAP 2.5(a) authorizes this court to "refuse to review" any alleged error not raised in the trial court, unless the claimed error relates to a lack of trial court jurisdiction, the failure to establish facts upon which relief could be granted, or a manifest error affecting a constitutional right. An alleged evidentiary error is only preserved if on appeal it is based on the same specific evidentiary rule that was raised in the appellant's objection at trial. *State v. Powell*, 166 Wn.2d 73, 82-83, 206 P.3d 321 (2009) ("We will not reverse the trial court's decision to admit evidence where the trial court rejected the specific ground upon which the defendant objected to the evidence and then, on appeal, the defendant argues for reversal based on an evidentiary rule not raised at trial.").

Justin never objected below on the basis that any of these statements failed to meet the requirements of recorded recollections under ER 803(a)(5). Although Justin objected to the shorter eight-minute recording to the deputy (exhibit 8), he objected solely on the grounds that the recording violated *Crawford*. And Justin did not object to the State's request to publish the longer recording to Detective Woods (exhibit 9) at all—he agreed to "leave it to the Court's discretion." VRP at 238. Moreover, Justin ultimately stipulated to the admission of both exhibits. And with respect to the domestic violence victim statement, Justin objected solely on the basis of "redundancy," not ER 803(a)(5).[4] VRP at 264. Thus, Justin failed to preserve these alleged errors

---

[4] Justin suggests in his briefing that his objection below was broader. He contends that he objected on the basis that the domestic violence victim statement "did not qualify as recorded recollection and it was cumulative and redundant after Gary's testimony because the State had already played Gary's statement for the jury." Br. of Appellant at 10. Our review of the record fails to show any objection was made other than "redundancy." VRP at 264.

9

below, and he makes no argument that they fall under any of the exceptions to RAP 2.5(a) on appeal. Accordingly, consistent with RAP 2.5(a), we decline to review whether these three statements, the two recordings and the domestic violence victim statement, meet the requirements of ER 803(a)(5).

III. ADMISSIBILITY OF DOMESTIC VIOLENCE VICTIM STATEMENT—IMPROPER OPINION TESTIMONY

Justin separately argues that the trial court abused its discretion in allowing the State to read portions of the domestic violence victim statement into evidence because it included an improper opinion on guilt. He contends that "Gary's domestic violence statements told the jury in several different ways that Justin assaulted him with a knife and toothbrush and caused lacerations." Reply Br. at 15. The State responds that Justin should not be able to raise this issue on appeal because he did not object below on this basis and he cannot show it was a manifest error affecting a constitutional right. We agree with the State.

A lay witness may give opinion testimony that is rationally based on their perceptions to help the jury understand their testimony so long as it is "not based on scientific, technical, or other specialized knowledge . . . ." ER 701. Permissible opinion testimony includes "personal observations of the defendant's conduct, factually recounted by the witness, that directly and logically support the conclusion." *See State v. Day*, 51 Wn. App. 544, 552, 754 P.2d 1021, *review denied*, 111 Wn.2d 1016 (1988). However, in giving their opinion, witnesses cannot tell the jury their "personal belief, as to the guilt of the defendant, the intent of the accused, or the veracity of witnesses." *State v. Montgomery*, 163 Wn.2d 577, 591, 183 P.3d 267 (2008). Improper opinions of a defendant's guilt violate the right to a fair trial and the right to have an impartial jury "make

an independent evaluation of the facts." *State v. Bar*, 123 Wn. App. 373, 380, 98 P.3d 518 (2004), *review denied*, 154 Wn.2d 1009 (2005).

At trial, Justin did not object to the victim statement on the basis of an improper opinion of guilt, which normally means the alleged error was not preserved for appellate review. *See Powell*, 166 Wn.2d at 82-83. One exception to this prohibition, however, is if Justin can show the error was manifest constitutional error. *Id.*; RAP 2.5(a).

An error is manifest under RAP 2.5(a) if the appellant can show actual prejudice demonstrated by a " 'plausible showing by the [appellant] that the asserted error had practical and identifiable consequences in the trial of the case.' " *State v. O'Hara*, 167 Wn.2d 91, 99, 217 P.3d 756 (2009) (alteration in original) (internal quotation marks omitted) (quoting *State v. Kirkman*, 159 Wn.2d, 918, 935, 155 P.35 125(2007)).

Opinion testimony regarding the defendant's guilt implicates the constitutional right to a jury trial, but it is not automatically reviewable as a manifest constitutional error. *State v. Barr*, 123 Wn. App. at 380. The reviewing court must still determine whether the error had " 'practical and identifiable consequences in the trial of the case' " to determine whether it is manifest. *Id.* at 381 (quoting *State v. Lynn*, 67 Wn. App. 339, 345, 835 P.2d 251 (1992)). In the context of an allegedly improper opinion of guilt, " 'an explicit or almost explicit' opinion on the defendant's guilt . . . can constitute manifest error." *State v. King*, 167 Wn.2d 324, 332, 219 P.3d 642 (2009) (quoting *Kirkman*, 159 Wn.2d at 936).

Here, Justin contends that allowing Gary's answers on the victim statement to be read into evidence was manifest error because this testimony "included [Gary's] opinion that Justin assaulted him" and "went directly to the ultimate issue of whether Justin assaulted [Gary]." Br. of Appellant at 26; Reply Br. at 17. This, Justin argues, constituted an explicit opinion on Justin's guilt.

We are not persuaded. Nothing Gary said in the victim statement can be characterized as an " 'explicit or almost explicit' opinion" on Justin's guilt. *King*, 167 Wn.2d at 332. The term "assault" as used legally to describe the specific crime of assault is simply not the same as it is used in the domestic violence victim statement. When looking at the victim statement in full context, it is clear that the form uses the term in a more general, colloquial sense, not in the detailed, legalistic sense encapsulated in the jury instructions.[5] Moreover, Gary never actually used the word "assault" in his responses. Instead, he described that he was "[a]ttacked with a knife" and,

---

[5] Here, the trial court instructed the jury that the legal definition of "assault" is as follows,

> An assault is an intentional touching, striking or cutting of another person, with unlawful force, that is harmful or offensive regardless of whether any physical injury is done to the person. A touching, striking or cutting is offensive if the touching, striking or cutting would offend an ordinary person who is not unduly sensitive.

> An assault is also an act, with unlawful force, done with intent to inflict bodily injury upon another, tending but failing to accomplish it and accompanied with the apparent present ability to inflict the bodily injury if not prevented. It is not necessary that bodily injury be inflicted.

> An assault is also an act, with unlawful force, done with the intent to create in another apprehension and fear of bodily injury, and which in fact creates in another a reasonable apprehension and imminent fear of bodily injury even though the actor did not actually intend to inflict bodily injury.

CP at 44.

12

as a result of the attack, he suffered from "lacerations." VRP at 246. These descriptions are not legal conclusions of guilt, much less " 'explicit or almost explicit' " opinions; rather, they squarely fall under the personal observations and factual memory of what happened to him that night. *King*, 167 Wn.2d at 332. Indeed, accepting Justin's argument would result in an alleged victim never being able to describe what happened to them with any reference to the word "assault." Justin cites no authority for such a novel argument and we have found none. Justin has not shown this alleged error was manifest.[6]

In short, Justin did not preserve at trial the alleged error that Gary's answers on the domestic violence victim statement constituted an improper opinion of guilt. And because Justin has not established that this alleged error was an explicit or near explicit opinion of guilt or otherwise had any practical or identifiable consequences on the outcome of his case, he has failed to show a manifest error affecting a constitutional right. Accordingly, we decline to reach the merits of the claim.

CONCLUSION

We affirm.

---

[6] Justin also references *State v. Quaale*, 182 Wn.2d 191, 201-02, 340 P.3d 213 (2014), a case that discusses the "aura of scientific certainty" that statements from law enforcement often have. Justin claims the father/son relationship in this case leads to the same type of "aura." *Quaale*, however, was not addressing improper opinions of guilt in the context of a manifest constitutional error analysis, so we do not find the case relevant to our resolution. *See Quaale*, 182 Wn.2d at 197 (commenting that defense counsel objected at trial to the question that arguably solicited the improper opinion from law enforcement.).

No. 58897-8-II

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

PRICE, J.

We concur:

CRUSER, C.J.

CHE, J.